| iLABORDE, Judge.
Defendant nursing home appeals the hearing officer’s decision that it was responsible for plaintiffs 21 day stay, when it only authorized two days of hospitalization, and the award of penalties and attorney’s fees. After a review of the record, we affirm, finding no error committed by the hearing officer.
*547 FACTS
Plaintiff, Irma Burch, was employed by Affiliated Nursing Homes, Inc. in Tioga Man- or Nursing Home as a cafeteria worker. On March 26, 1991, Burch was injured when she received an electric shock from the equipment she was working on. Dr. James David diagnosed Burch with bilateral thoracic outlet syndrome. He subsequently recommended surgery for a right sided first rib resection, which was scheduled to be performed on March 31, 1992.
Before Burch was admitted to the hospital, her case had to be reviewed under |2a pre-certification process as required under R.S. 23:1291. As Affiliated was self-insured for workers’ compensation, it hired F.A. Richard & Associates, Inc., to adjust the claim. Richard in turn hired Medical Rehab Consultants to perform the utilization review functions. Elaine Stillwell, a registered nurse who owned and operated Medical Rehab, approved Burch for a two day stay at Rapides Regional Medical Center.
Burch entered Rapides on March 31, 1992 and surgery was performed by Dr. David. On the third day after surgery, Burch developed complications from surgery due to a staph infection she contracted while in the hospital. The infection caused increased fluid in her lungs which eventually developed into pneumonia. Thus, Burch was not discharged from the hospital after two days but remained in the hospital until April 24, 1992.
Burch returned to Rapides on May 7,1992, again due to complications from the surgery. When Rapides contacted F.A. Richard for approval of Burch’s re-admission, Kay Love, an adjustor, approved the re-admission as long as it was related to the first surgery. Burch was also treated in the emergency room at Rapides on April 29, 1992 and July 10, 1992.
The bill for Burch’s hospital stay of March 31 through April 24 totalled $31,991.81. Affiliated was required to pay this bill within 60 days of .receipt under R.S. 23:1201.2. However, it did not pay until September 15,1992, and at that time it paid only $5,565.50 for the two days of hospitalization it originally authorized. A trial was.held concerning this disputed bill on July 15, 1993, with Rapides intervening to recover its unpaid medical bill. Hearing Officer Brenza Irving found in favor of claimant and Rapides, finding that defendant had acted arbitrarily and capriciously in refusing payment for Burch’s extended hospital stay and awarded ^penalties and attorney’s fees.
ASSIGNMENTS OF ERROR
Defendant alleges that the hearing officer erred in finding that:
1. Affiliated Nursing Homes, Inc., was responsible for the expenses incurred in a 21 day hospitalization when the employer’s representative had only authorized two days of hospitalization; and
2. Affiliated Nursing Homes, Inc., was arbitrary and capricious in its refusal to pay for 19 days of hospitalization which was neither authorized nor requested, and in awarding $15,000 in attorneys fees and $2,500 in penalties for a $26,000 medical bill.
LAW
In defendant’s first assignment of error, it claims it was not responsible for claimant’s entire hospital stay because it only authorized two days of hospitalization for claimant. The hearing officer rejected defendant’s claim, finding that it was required to review claimant’s condition before she was discharged from the hospital under Title 40, Labor and Employment, Chapter 27, § 2707. We affirm this conclusion, and also the award of penalties and attorney’s fees, adopting the well written reasons for judgment of the hearing officer.
On or about March 26, 1991, Irma Burch, claimant herein, sustained personal injury by accident arising out of and in the course of her employment with Tioga Manor Nursing Home, Inc. Affiliated Nursing Homes, Inc. is a management company operating fourteen nursing homes throughout Louisiana. Tioga Manor Nursing Home is managed by Affiliated Nursing Homes, Inc. Affiliated Nursing Homes, Inc. is the self-insured employer, within the scope of Louisiana Workers’ Compensation Law, of Irma Burch (hereinafter, Affiliated Nursing Homes, Inc. *548 will be referred to as “Affiliated”). Affiliated hired F.A. Richard & Associates, Inc. (“F.A. Richard”), an adjusting company, to administer its self-insured Workers’ Compensation program. F.A. Richard hired Medical Rehab Consultants, Inc. (“Medical Rehab”) to assist with Affiliated’s pre-certification and utilization review matters.
| ¿tirina Burch was electrically shocked while working in the cafeteria at Tioga Man- or Nursing Home. As a result of the electrical shock and corresponding trauma produced by the shock, Irma Burch suffered thoracic outlet syndrome. After approximately seven months of conservative treatment to cure the thoracic outlet syndrome, surgery became necessary. As surgery was a necessary medical procedure resulting from the thoracic outlet syndrome, Irma Burch received approval for right rib resection surgery from Medical Rehab, the pre-certification company utilized by Affiliated. Irma Burch was pre-approved for two days hospitalization at Rapides Regional Medical Center (hereinafter “Rapides”).
Irma Burch entered Rapides on March 31, 1992 and remained hospitalized for twenty-two days until April 21, 1992. The extended hospitalization was due to complications associated with the surgery. While hospitalized, Irma Burch developed fever, a staph infection in the surgical wound, and pleural effusion which necessitated the continued hospitalization.
The necessary and reasonable value of the medical services rendered to Irma Burch as a result of the March 31, 1992 through April 21, 1992 hospitalization (hereinafter referred to as the “Hospitalization”) was $31,991.81. On September 15, 1992, Affiliated, through its agent, F.A. Richard, paid $5,565.50 to Rapides for the Hospitalization (Rapides Exhibit 6). This amount represented the total charges incurred by Irma Burch for the first two days hospitalized (testimony of Lyman Phillips and Elaine Stillwell). Affiliated refuses to pay the remaining balance on the bill of $26,426.31.
Affiliated, in its pre-trial statement, asserts that it is not responsible for the $26,426.31 balance because the medical providers simply failed to comply with Continual Stay Provisions.
IsThe first issue therefore, is who (Affiliated or Rapides) failed to comply with the Utilization Review Procedures, Section 2707D.1, the Continued Stay Review provision. The second issue before the court is whether Affiliated’s failure to pay the $26,-426.31 balance for the medical treatment rendered to Irma Burch by Rapides is arbitrary, capricious and without probable cause, subjecting Affiliated to penalties and attorney’s fees.
Affiliated agreed to pay for right rib re-section surgery to treat Irma Burch’s thoracic outlet syndrome. Pursuant to the Department of Labor, Office of Workers’ Compensation, Chapter 27 Utilization Review Procedures (“Utilization Review Procedures”), Sections 2703 and 2705, the pre-admission certification process for Irma Burch was completed. Rapides and Dr. James David’s office were in contact with Affiliated, through its agent, Medical Rehab, for pre-admission certification. The purpose of pre-admission certification is to review and assess the medical necessity and appropriateness of hospital admission before hospitalizar tion occurs. Pre-admission certification must be initiated by the physician, hospital, or claimant. Utilization Review Procedure Section 2705C. It is not disputed that appropriate pre-admission certification occurred for Irma Burch. The testimony of Deborah Dauzat, Elaine Stillwell, Lyman Phillips and Fran Rachal established that appropriate pre-admission certification occurred prior to Irma Burch’s admission into Rapides. The Inpatient Approval Letter from Medical Rehab dated February 21, 1992 (“Inpatient Approval Letter”) (Exhibit D-l), conclusively establishes that pre-admission certification occurred. Pursuant to Louisiana Workers Compensation Statutes and Regulations, Irma Burch was properly hospitalized on March 31, 1992.
| (¡Once Ms. Burch was hospitalized on March 31, 1992, and a necessity for continued hospitalization existed, the Utilization Review rules then shift from pre-admission certification to Continued Stay Review Procedures. “Continued Stay Review is the review of the *549 appropriateness and necessity of continued hospitalization while the patient is still in the hospital” Utilization Review Procedures, Section 2707B. Stated somewhat differently, Continued Stay Review is defined as “the review of an ongoing inpatient hospitalization to assure that it remains the appropriate setting for the care to be rendered” Section 2703B.5.
Unlike pre-admission certification where initiation responsibility lies with the physician, hospital, or claimant (Utilization Review Procedures, Section 2705C.), the Continued Stay Review procedures clearly place the responsibility to initiate and conduct Continued Stay Review on the carrier/self-insured employer (in the ease before the court, Affiliated). Utilization Review Procedures, Section 2707D.1 states as follows:
“The Carrier/Seif-Insured Employer will automatically review the necessity for continued hospitalization the day before the initial length of stay assigned expires without claimant initiation responsibility. The responsibility to request an extension may be delegated to the hospital if requested by the hospital and agreed to in writing by the Carrier/Seif-Insurer Employer. If the party who has the responsibility for initiating the continued stay review fails to do so, they will be responsible for the cost of any subsequent care provided.”
Affiliated did not automatically review the necessity for continued hospitalization of Irma Burch. Section 2707D unambiguously established the duty of Affiliated to “automatically review the necessity for continued hospitalization the day before the initial length of stay assigned” expired for Irma Burch, absent an agreement to the contrary with Rapides. Elaine Stillwell’s testimony proved that she did not, on behalf of Affiliated, 17review the necessity for the continued hospitalization of Irma Burch before the initial length of stay assigned expired on April 1, 1992. Suzanne Simpson of the Utilization Review Department at Rapides testified that no Continued Stay Review inquiries were received for Irma Burch during the Hospitalization.
Rapides did not request from Affiliated that it be delegated any Continued Stay Review responsibility. As Affiliated did not automatically review the necessity for continued hospitalization of Irma Burch, the pivotal issue at trial was whether Rapides assumed any Continued Stay Review responsibility from Affiliated. For Rapides to assume Continued Stay Review responsibility, two conditions must be satisfied. First, Rapides must request the responsibility to initiate Continued Stay Review. Secondly, Affiliated must agree in writing to Rapides’ request that it be delegated Continued Stay Review responsibility. For Affiliated to prevail in the instant matter, it must prove the existence of a request by Rapides and a written confirmation of the request.
Before analyzing the facts adduced at trial with respect to the alleged request, a review of the history of Section 2707D.1 will assist in interpreting the 2707D.1. as currently written. Prior to the March 1991 revisions, Section 2707D.1. read as follows:
“The Carrier/Seif-Insured Employer will automatically review the necessity for continued hospitalization the day before the initial length of stay expires without claimant initiation responsibility. The responsibility to request an extension may be delegated to the hospital or the physician.”
(Exhibit B highlights the changes and additions to 2707D.1 as revised in March, 1991). Two notable changes were made to Section 2707D.1. First, the responsibility to request an extension of hospitalization could no longer be delegated to the physician. Interestingly, the Inpatient Approval Letter whereby Affiliated alleges that the responsibility |8to request an extension was delegated to Rap-ides is addressed to the physician, Dr. James David, a person who cannot assume continued stay review responsibility. Secondly, the revision in March of 1991 clarified that the" responsibility to request an extension may be delegated to the hospital but if and only if two requirements are met. First, the responsibility to request an extension must be requested by the hospital. The statute obviously was amended to avoid the precise situation litigated in the instant matter; that is, an unsupported claim by a self-insured em *550 ployer that Continued Stay Review responsibilities have been delegated to the hospital.
Affiliated alleges that the “request” by Rapides occurred in February, 1992, during a telephone conversation between Deborah Dauzat, an Admitting Department employee of Rapides, and Elaine Stillwell, the president and sole shareholder of Medical Rehab. Since 1988, Deborah Dauzat has been a patient registrar in the Admitting Department at Rapides. As a patient registrar, her duties include admitting and pre-admitting patients. The pre-admission process involves the verification of insurance coverage of a patient and obtaining from the pre-certification company a pre-certification number. Deborah Dauzat is not a nurse. Her job is simply to obtain data and record the data on the appropriate hospital forms.
Deborah Dauzat, Sam Echols, the Business Manager at Rapides, and Suzanne Simpson, supervisor of the Utilization Review Department at Rapides, all testified that Continued Stay Review was the responsibility of the Utilization Review Department and not the Admitting Department. Furthermore, the Admitting Department’s policy with respect to Continued Stay Review inquiries was, and still is, that if any person requested | ¡Information concerning Continued Stay Review, the requesting party would be referred to the Utilization Review Department. Specifically, if an insurance company or pre-certification company requests, in the pre-certification process with a patient registrar, that the hospital initiate a telephone call if a patient is required to remain hospitalized beyond the number of days certified, the patient registrar will immediately place the individual in contact with the Utilization Review Department, or will provide the individual with a telephone number and beeper to the Utilization Review Department.
• Elaine Stillwell is a registered nurse. She is knowledgeable of corporations, as she is the sole shareholder and president of Medical Rehab. She testified that she is extremely knowledgeable of Louisiana Workers’ Compensation Law and the Utilization Review Procedures, and that she understands the distinction between Utilization Review Departments and Admitting Departments.
Ms. Stillwell further testified that Medical Rehab’s policy was not to initiate telephone calls concerning Continued Stay Review if the health care provider had a Utilization Review Department. A telephone call would not be initiated notwithstanding the fact that Medical Rehab would daily review its patient list to ascertain what patients were to be discharged from the hospital.
Given the Utilization Review Procedures, the individuals involved in the alleged request, and the policies of the entities involved, Deborah Dauzat did not request that Rapides be delegated any responsibility with respect to Continued Stay Review. Elaine Stillwell, after attempting to avoid a direct answer to the question, admitted that Deborah Dauzat did not request, on behalf of Rapides, that Rapides be delegated the responsibility to initiate Continued Stay Review. On the basis of Elaine Stillwell’s testimony alone, | ipAffiliated was responsible for initiating Continued Stay Review for Irma Burch and failed to do so.
Although Elaine Stillwell testified that there was no request from Deborah Dauzat, she attempted to manufacture a “request”. Elaine Stillwell allegedly told Deborah Dau-zat, during the February, 1992 telephone conversation, that Rapides must call Medical Rehab if Irma Burch stayed beyond the two days for which she was pre-eertified. The facts adduced at trial established that Elaine Stillwell never asked nor told Deborah Dau-zat to call Medical Rehab. Deborah Dauzat testified that if such a request had been made of her, pursuant to long standing hospital policy, she would have referred Elaine Stillwell to the Utilization Review Department. Deborah Dauzat would have either transferred the call to Utilization Review or given Elaine Stillwell a telephone number to contact Utilization Review. Deborah Dauzat further testified that if the request had been made of her by Elaine Stillwell, she would have documented the request on the insurance verification form (Exhibit D-2) along with a notation indicating referral to Utilization Review. The insurance verification form contains no notation of a request from Elaine Stillwell. Deborah Dauzat testified in a credible and believable manner. '
*551 Elaine Stillwell testified that she specifically recalled, in great detail, the precise telephone conversation with Deborah Dauzat whereby Deborah Dauzat agreed that Rap-ides would call Medical Rehab if Irma Burch remained hospitalized beyond the two days pre-certified. Elaine Stillwell’s business in conducted over the telephone. She acknowledged she makes numerous telephone calls every day. For her to testify she remembers in great detail the precise telephone call with Deborah Dauzat which Inoccurred approximately seventeen months before her testimony at trial makes this court question her credibility. In short, the evidence adduced at trial conclusively establishes that Rapides never requested to be delegated any Continued Stay Review responsibility.
Affiliated did not agree in writing that the hospital be delegated Continued Stay Review responsibility. Assuming ar-guendo, that Deborah Dauzat requested Continued Stay Review responsibility, for Affiliated to prevail, it must also establish that the request for Continued Stay Review responsibility was “agreed to in writing” by Affiliated. Affiliated alleges that the “Inpatient Approval Letter” (Exhibit D-4) dated February 27, 1992, addressed to Dr. James David and mailed on Medical Rehab letterhead constitutes the agreement in writing by Affiliated that Rapides would be delegated the responsibility to initiate Continued Stay Review. The allegation that the Inpatient Approval Letter is a written confirmation of delegation of Continued Stay Review responsibility is untenable for several reasons.
First, the Inpatient Review Letter does not state that it is a written confirmation by Affiliated of a request by Rapides to assume Continued Stay Review responsibility. Elaine Stillwell testified that the language “IF THE CLAIMANT REQUIRES CONTINUED SERVICES BEYOND THAT APPROVED ...” The admitting physician or authorized medical provider should contact the Utilization Review Department at 1-800-822-7032 on or before the above days expire” (Exhibit D-A) constitutes the writing by Affiliated agreeing to Rapides’ request for delegation of Continued Stay Review responsibility. The Inpatient Approval Letter does not mention that Rapides agreed to a delegation of Continued Stay Review responsibility. Elaine Stillwell’s skewed interpretation of the Inpatient Approval | igLetter is untenable.
Second, the purpose of the Inpatient Approval Letter (entitled “Pre-Admission Approval Letter” by the Workers’ Compensation Regulations) is set forth in the Utilization Review Procedures, Section 2705E.1.C., Standardized Form Letters: “The Carrier/Self-Insured Employer will develop letters announcing the results of pre-admission certification process ...” As explicitly set forth in the Utilization Review Procedures, the purpose of the Inpatient Approval Letter dated February 27, 1992, is to announce the results of pre-admission certification. The Inpatient Approval Letter accomplishes its purpose by announcing to Dr. James David that Irma Burch is approved for admission to Rapides for first rib re-section surgery. The letter is addressed to Dr. David, the admitting physician, a person to whom the responsibility of continued Stay Review cannot be delegated. Affiliated’s attempt to broaden the purpose and intent of the Inpatient Approval Letter as a confirmation of the shifting of responsibilities with respect to Continued Stay Review is contrary to the wording of the Inpatient Approval Letter and purpose of the letter as established in the Utilization Review Procedures.
The purpose of the Inpatient Approval Letter is further documented by the fact that it is addressed to Dr. James David and only carbon copied to Debbie Dauzat at Rapides. As Utilization Review Procedures, Section 2707D establishes, Continued Stay Review cannot be delegated to the physician. If the intent of the Inpatient Approval Letter was to shift Continued Stay Review responsibility, the Inpatient Approval Letter would have been addressed to Rapides, the appropriate party. As Elaine Stillwell and Fran Rachal admitted at trial, the issue of who must initiate Continued Stay Review is a question ofjjjvital importance. If the party responsible for initiating the Continued Stay Review fails to do so, it will be responsible for the cost of any subsequent care provided. Utilization Review Procedures, Section 2707D. In the instant matter, approximately $26,- *552 000.00 rest upon the resolution of the issue of who failed to initiate Continued Stay Review. If Elaine Stillwell or Affiliated had intended for this Inpatient Approval Letter to shift the responsibility with respect to Continued Stay Review, the letter would have been addressed (and not carbon copied) to the appropriate party, Rapides. Both Elaine Stillwell and Fran Rachal are business and corporate oriented individuals knowledgeable in business and corporate practices. For Affiliated to argue that an important corporate business decision involving thousands of dollars can be confirmed simply by carbon copying a vaguely worded letter to the affected corporation is meritless, arbitrary and capricious.
Finally, Elaine Stillwell testified that during and before February, 1992, the Inpatient Approval Letter was the form letter that went to all health care providers. She acknowledged that the February 27,1992 form letter did not differentiate between health care providers who, in her opinion, agreed to assume the responsibility to initiate of Continued Stay Review and those who did not. This testimony alone established that Ms. Stillwell did not intend for the February 27, 1992 form letter to be a confirmation in writing of the delegation of any responsibility with respect to Continued Stay Review.
Deborah Dauzat had no authority to request Continued Stay Review responsibility. Assuming that the court finds that Deborah Dauzat requested, on behalf of Rapides, that Rapides be delegated the responsibility to initiate Continued Stay Review and that the | uFebruary 27, 1992 Inpatient Approval Letter is a written confirmation of the delegation as contemplated by Utilization Review Procedures, Section 2707, the law still mandates that Affiliated pay the $26,426.31 to Rapides because Rapides cannot be bound by the unauthorized act of an agent (Deborah Dauzat). Deborah Dauzat had no authority from Rapides to Request Continued Stay Review responsibility. Deborah Dauzat testified that she had no such authority. Sam Echols testified that Debbie Dauzat had no such authority. As set forth by Sam Echols, Suzanne Simpson, and Deborah Dauzat, all inquiries concerning Continued Stay Review were referred to the Utilization Review Department.
Affiliated, through its agent, Medical Rehab, was dealing with a corporation, Rapides. Elaine Stillwell is the sole owner and president of Medical Rehab. As such, Elaine Stillwell is a person knowledgeable of corporations and the way corporations function. Elaine Stillwell testified that she did not inquire into nor ascertain the nature or extent of the powers of Deborah Dauzat with respect to the delegation of Continued Stay Review responsibility. Elaine Stillwell did not make such an inquiry knowing the difference between the Admitting Department and the Utilization Review Department at Rap-ides, and knowing that the Admitting Department, through Deborah Dauzat, could not make corporate decisions with respect to delegation of Continued Stay Review responsibilities. Elaine Stillwell dealt with Deborah Dauzat at her own risk. Elaine Stillwell had a duty to inquire and ascertain the nature and extent of the powers of Deborah Dauzat and to determine whether or not Deborah Dauzat had the authority to assume on behalf of Rapides the authority to assume Continued Stay Review | ^responsibility. Accordingly, assuming Affiliated established that Deborah Dauzat indeed requested delegation of Continued Stay Review responsibility and that the Inpatient Approval Letter was a written confirmation of such delegation, Affiliated is not entitled to the relief requested because Deborah Dauzat had no authority to act on behalf of Rapides.
The next question to be decided by the court concerns attorney’s fees and penalties. The imposition of attorney’s fees is governed by La.R.S. 23:1201.2, which states in part:
“Any insurer liable for claims arising under this Chapter, and any employer whose liability for claims under this Chapter is not covered by insurance, shall pay the amount of any claim due under this Chapter within sixty days after receipt of written notice. Failure to make such payment within sixty days after receipt of notice, when such failure is found to be arbitrary, capricious or without probable cause shall subject employer or insurer, in addition to *553 amount of the claim due, to payment of all reasonable attorney’s fees for the prosecution and collection of such claim ...”
It is not disputed that Affiliated received written notice of the $31,1991.81 hospital bill from Rapides on May 12, 1992. It is not disputed that $5,565.50 of this bill was paid to Rapides by a check dated September 15, 1992. The $5,565.50 represented Rap-ides’ bill for Irma Burch’s first two days of hospitalization. The testimony of Elaine Stillwell and Lyman Phillips established that the $5,565.50 payment was never disputed. However, the $5,656.50 [sic] was not paid within sixty days after receipt of written notice of the claim. It is not disputed that Affiliated has not paid the balance of the bill, $26,426.31. The issue with respect to attorney’s fees, therefore, is whether Affiliated’s refusal to pay the $26,426.31 is arbitrary, capricious or without probable cause. Arbitrary and capricious conduct may be presumed when an employer fails to pay compensation benefits within |16sixty days after written notice of the claim.
Affiliated hired F.A. Richard as its third party administrator for Workers’ Compensation claims. The testimony of Mr. Lyman Phillips, as the adjuster at F.A. Richard who handled Irma Burch’s claim, and his adjuster’s notes, which were introduced into evidence at trial, conclusively establish that Affiliated’s refusal to pay the $26,426.31 balance was and is arbitrary, capricious and without probable cause.
The denial of the $26,426.31 balance is based upon Dr. Isaac Kirshbaum’s report. The report is dated September 25, 1992, and is in evidence as an attachment to the October 30, 1992 letter from Medical Rehab to Jane D’Angelo (attached hereto as Exhibit C). Dr. Kirshbaum’s report does not discuss Continued Stay Review, conclusively establishing that the purported defense of Continued Stay Review was manufactured after October, 1992.
A review of Lyman Phillips’ adjuster’s notes clearly establishes that Affiliated refusal to pay the $26,426.31 balance was arbitrary, capricious or without probable cause. Affiliated, after months of procrastination, sought to escape their liability under Louisiana Workers’ Compensation Act by searching for any reason to deny the payment. In August, 1992, Affiliated, for the first time, began to investigate the accident. Elaine Stillwell tried to develop every conceivable argument for not paying Rapides’ bills. Finally, Affiliated settled on Dr. Kirshbaum’s letter as the basis for not paying. Dr. Kirsh-baum’s letter has nothing to do with Continued Stay Review procedures. Now, Affiliated has abandoned all their previous arguments and is attempting to make a good faith argument that their reason for not paying is and always was the lack of Continued Stay Review. ^^Furthermore, assuming that Affiliated always denied payment on the basis of a lack of Continued Stay Review, because that argument is meritless, it constitutes an arbitrary and capricious refusal to pay.
Louisiana Revised Statute 1201.2 states that if the failure to pay a claim is found to be “arbitrary, capricious, or without probable cause,” the employer, or insurer shall pay “all reasonable attorney’s fees for the prosecution and collection of such claim ...” All reasonable attorney’s fees would include attorney’s fees incurred by Ms. Burch and attorney’s fees incurred by Rapides.
The attorney’s fees language of La.R.S. 23:1201.2, when compared with the attorney’s fees language in La.R.S. 23:1142 D, demonstrates that Rapides is entitled to attorney’s fees. As Affiliated’s refusal to pay Rapides’ medical bills is arbitrary and capricious, Affiliated, under the clear language of the statute, is responsible for the payment of Rap-ides’ attorney’s fees.
Furthermore, Rapides has a contractual right to attorney’s fees. In Rapides’ Exhibit 2, Irma Burch assigned benefits to Rapides, as follows:
“I hereby assign to the Hospital ... all insurance benefits payable to me or Patient as a result of the services provided to Patient for this period of hospitalization by Hospital ... I direct that payment to be made directly to Hospital ... I assign to Hospital ... by right under La.R.S. 22:657(A) or any similar statute to penalties for failure of any insurance company to timely pay a claim for services rendered *554 to Patient for this period of hospitalization.”
Louisiana Revised Statute 23:1201.2 is a penalty statute similar to La.R.S. 22:657(A), both allowing for attorney’s fees. Therefore, pursuant to the assignment of benefits by Irma Burch to Rapides, Rapides is entitled to recover penalties and attorney’s |18fees for the failure of Affiliated to timely pay the claim for services rendered to Irma Burch for the period of hospitalization of March 31, 1992 through April 21, 1992.
This court finds that a penalty in the amount of $2,500.00 is hereby assessed against defendants, Tioga Manor Nursing Home and Affiliated Nursing Homes, Inc.
This court also finds that attorney’s fees are warranted on behalf of Chris Roy, attorney for claimant in the amount of $7,500.00. The court also awards attorney’s fees on behalf of Gregory Upton, attorney for Rap-ides in the amount of $7,500.00.
All costs are assessed against defendant, Tioga Manor Nursing Home and Affiliated Nursing Homes, Inc.
Monroe, Louisiana, this 18 day of November, 1993.
/s/ Brenza R. Irving BRENZA R. IRVING Judge
Jigln its answer to appeal, Rapides requests an increase in penalties and attorney’s fees. First, it claims that the penalty should be increased because it was not calculated correctly, according to statute. Second, it contends that the amount of attorney’s fees should be increased for the work expended in preparing this appeal.
We find that Rapides is entitled to an increased penalty but not to additional attorney’s fees on appeal. The hearing officer assessed a statutory penalty of $2,500 against defendants, Tioga Manor Nursing Home and Affiliated Nursing Homes, Inc. R.S. 23:1201 E provides that the statutory penalty for untimely payment of medical benefits shall equal:
“... twelve percent thereof or a total penalty of not more than fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid, whichever is greater, which shall be paid at the same time as, and in addition to, such compensation, unless such nonpayment results from conditions over which the employer or insurer had no control- The total fifty dollar per calendar day penalty provided for in this Subsection shall not exceed two thousand dollars in the aggregate.” (Emphasis added).
In the present case, the bill from Burch’s first hospital stay totalled $31,991.81. However, defendants paid for the first two days of the stay, leaving an unpaid balance of $26,426.31. Twelve percent of $26,426.31 is $3,171.16, which amount is greater than the $2,000 aggregate amount of the $50 per day penalty. Thus, plaintiffs are statutorily entitled to a penalty of $3,171.16.
DECREE
The judgment of the hearing officer is affirmed as amended to increase the statutory penalty to $3,171.16. Costs assessed to defendant-appellant.
AFFIRMED AS AMENDED.