662 So.2d 14 (1995)
Shirley FERRIER, Plaintiff-Appellee,
v.
JORDACHE-DITTO'S, Defendant-Appellant.
DITTO APPAREL AND EXECUTIVE RISK CONSULTANTS, Plaintiffs-Appellants,
v.
FENOLI HEALTH CLINIC, Defendant-Appellee.
Nos. 94-1317, 94-1318.
Court of Appeal of Louisiana, Third Circuit.
May 17, 1995.
Order Denying Rehearing October 30, 1995.
*15 William L. Townsend, III, Natchitoches, for Shirley G. Ferrier in both cases.
Bradley John Gadel, Alexandria, for Jordache-Ditto's in No. 94-1317.
Dorwan Gene Vizzier, Alexandria, for Fenoli Health Clinic in No. 94-1317.
Bradley John Gadel, Alexandria, for Ditto Apparel, et al.
Dorwan Gene Vizzier, Alexandria, for Fenoli Health Clinic, Shirley G. Ferrier in No. 94-1318.
Before DOUCET, C.J., and LABORDE and KNOLL, JJ.
KNOLL, Judge.
In this worker's compensation dispute, defendants, Jordache-Ditto Apparel (Jordache) and its worker's compensation claim management company, Executive Risk Consultants, Inc. (ERC), appeal a hearing officer's judgment, *16 awarding Shirley Ferrier (Ferrier) temporary total compensation benefits, supplemental earnings benefits (SEB), travel expenses, medical expenses, and attorney's fees and penalties. The defendants also appeal an award of attorney's fees, penalties, and medical expenses to Fenoli Health Clinic, a chiropractic therapy provider which treated Ferrier. Additionally, Fenoli Health Clinic answered, requesting additional attorney's fees for defense of this appeal. We affirm in part, reverse in part, and render.

Facts
On August 21, 1991, after working almost thirteen and a half years as a sewing machine operator and serger for Jordache, Ferrier tripped on some loose thread and fell to the concrete floor, striking clamps and other sewing machinery. As a result of the fall, Ferrier sustained work related injuries to her left arm, buttocks, shoulder, and back. The next day, on August 22, 1991, Dr. James V. Kaufman wrote Ferrier a prescription for a muscle relaxer, but did not physically examine her. On August 23, 1991, Ferrier was referred by her employer to Dr. William H. Brown, a doctor specializing in occupational and industrial medicine. During his physical examination, Dr. Brown noted contusions and abrasions covering Ferrier's left arm, left buttock, left shoulder, and back. While conducting range of motion and palpitation tests, Dr. Brown observed that Ferrier experienced considerable discomfort, tenderness, pain, and a general numbness in her left arm. Dr. Brown treated Ferrier with pain relievers and muscle relaxants. He then released Ferrier to light duty work with limited lifting, pulling and pushing capacity, and an absolute prohibition against climbing, squatting, or twisting. After returning to work at Jordache, Ferrier experienced physical difficulty in the performance of her duties. The record shows that she could not physically perform the lifting, sitting, bending, and twisting that her job as a sewing machine operator required. Prompted by pain and physical incapacity, Ferrier returned to Dr. Brown's office on August 27, 1991, two days before her scheduled appointment. Ferrier described her pain as an aching, burning and drawing sensation in the area around her left shoulder blade. During his examination, Dr. Brown noticed that Ferrier walked humped over and cautiously guarded the area of her injury. He also diagnosed a mild kyphosis or curvature in the area of her upper spine. Because of her continued physical disability, Dr. Brown placed Ferrier on a disabled and incapacitated status and scheduled another examination for August 30, 1991.
After re-examining Ferrier on August 30, 1991, Dr. Brown released her to work without any limitations for September 3, 1991, premised upon her improved physical condition. That same day, Ferrier sought approval from ERC to receive chiropractic treatment from Dr. Joseph S. Markiewicz, a chiropractor at the Fenoli Health Clinic. Dr. Markiewicz began his chiropractic therapy by ordering x-rays, taking Ferrier's medical history, and administering inferential therapy, which included electrical, ultrasound modalities.
On September 4, 1991, Ferrier returned to Dr. Markiewicz for a comprehensive chiropractic examination, adjustment, urinalysis, and a continued regime of inferential therapy. Dr. Markiewicz opined that as a result of her accident, Ferrier sustained disc displacement, pelvic segmental dysfunction, cervical sprain, muscle inflammation, and sinus disorders. During his examination, Dr. Markiewicz observed muscle spasms in the area of Ferrier's lower back. At the end of his examination, Dr. Markiewicz concluded that Ferrier remained disabled and incapacitated as a result of her injuries, and could not return to work.
Ferrier's program of chiropractic treatment continued until September 16, 1991, when Dr. Markiewicz felt that Ferrier's condition had improved enough to return her to light duty work with limitations on lifting objects over 10 lbs. and standing for periods longer than 45 minutes. On October 16, 1991, approximately one month after attempting to resume her former duties at Jordache, Ferrier discontinued her employment because she still experienced physical disability and pain. Thereafter, Ferrier received a regular and well documented regime of chiropractic treatment from Fenoli Health Clinic that lasted until May 18, 1992. Because *17 ERC declined to pay for Ferrier's chiropractic treatment after December 1991, a bill for the remaining chiropractic treatment accrued to $6,242.
While receiving chiropractic care, Ferrier was examined by several medical doctors. On October 31, 1991, at the request of Jordache, Dr. R.J. Beurlot, Jr., an orthopedic surgeon, examined Ferrier and took x-rays. Dr. Beurlot discovered tenderness in the L4-5 level of Ferrier's back, and in her mid-line lower cervical upper thoracic area when he conducted range of motion and expansion tests. Because Dr. Beurlot felt that his physical examination and x-rays did not satisfactorily rule out the presence of an objective cause for Ferrier's physical disability and pain, Dr. Beurlot referred her to Dr. Arsham Naalbandian, a neurologist, for neurological evaluation and EMG testing.
On January 16, 1992, Dr. Naalbandian conducted a neurological evaluation of Ferrier's injuries and an EMG. Although Dr. Naalbandian found no objective evidence of nerve damage, he determined that Ferrier was still suffering from musculoligamentous or soft tissue injuries which included a resolving cervical sprain or strain, tenderness in the supra and medial scapular region on the left side, in the paravertebral cervical spine in its lower segments, and in Ferrier's lower lumbar spine, at the L-4 through S-1 vertebral levels.
On May 12, 1992, Ferrier received an independent medical evaluation from Dr. William S. Bundrick, an orthopedic surgeon. Dr. Bundrick noted in his medical report that Ferrier was suffering from a resolving cervical sprain without objective findings and a resolving lumbar sprain with objective findings. In order to conclusively rule out nerve damage, Dr. Bundrick recommended that Ferrier undergo an MRI in her lumbar area. Despite his recommendation for additional diagnostic testing, Dr. Bundrick felt that Ferrier could return to work at Jordache as a seamstress.
On August 27, 1992, Dr. Anil Nanda, a neurosurgeon, examined Ferrier. Dr. Nanda performed leg raising tests and ordered lumbar and cervical MRI's. The MRI's showed that Ferrier's lumbar and cervical spinal areas were normal, despite a mild and clinically insignificant bulge at her L-5/S1 level. Dr. Nanda opined that Ferrier suffered from resolving cervical and lumbar sprains as a result of her accident at Jordache on August 21, 1991. Dr. Nanda concluded that Ferrier's cervical and lumbar sprains were potentially chronic, but did not necessitate surgery or further medical treatment. However, Dr. Nanda did prescribe three months of physical therapy. Additionally, Dr. Nanda predicted that Ferrier probably would not be able to return to her old job at Jordache, but believed that Ferrier could return to light duty work with lifting and sitting restrictions.
On February 15, 1993, Ferrier's condition worsened and she required emergency room treatment at Rapides General Hospital. While there, Ferrier was examined by Dr. Michael Richey, an attending emergency room physician at the hospital. Dr. Richey reported observable muscle spasms in her lumbar sacrol and medial trapezius regions. Dr. Richey prescribed a follow up treatment with Dr. Nanda and generally recommended physical therapy. After consultation with Dr. Nanda, Ferrier was again prescribed physical therapy. Ferrier received physical therapy at LSU Medical Center from February 1993 until June 8, 1993.
Ferrier initiated a claim for disputed compensation on June 19, 1992, asserting her right to temporary total benefits, SEB, unpaid medical, chiropractic, and travel expenses, attorney's fees and penalties. Pursuant to LSA-R.S. 23:1034.2, the defendants also filed a claim disputing the necessity and reasonableness of Ferrier's chiropractic treatment at Fenoli Health Clinic. Both claims were consolidated. During the administrative hearing of this matter, the defendants challenged all of Ferrier's assertions, but focused most of their efforts in controverting the $6,242 owed to Fenoli Health Clinic for Ferrier's chiropractic treatment.
After the administrative hearing, the hearing officer awarded Ferrier temporary total compensation benefits, supplemental earnings benefits (SEB), medical expenses, and penalties and attorney's fees. The hearing *18 officer also awarded penalties and attorney's fees to Fenoli Health Clinic.

Temporary Total Benefits
In her judgment and reasons for judgment, the hearing officer found that Ferrier presented clear and convincing evidence pursuant to LSA-23:1221(1)(c), establishing her entitlement to temporary total compensation benefits in the amount of $176.67 from August 27, 1991, until May 12, 1992, less and except the period between September 16, 1991 and October 16, 1991, when she received wages while attempting to resume her former duties at Jordache. Whether or not a plaintiff is temporarily totally disabled is a question of fact; when such a decision is based upon reasonable evaluations of credibility, such a determination of fact should not be disturbed on appeal when there is evidence before the trier of fact which furnishes a reasonable factual basis for such a finding, unless such findings are clearly wrong. Landry v. Central Industries, Inc., 592 So.2d 478 (La.App. 3d Cir.1991), writ denied, 593 So.2d 381 (La.1992). We have thoroughly reviewed the record, and find that the medical evidence, combined with Ferrier's own testimony, clearly shows that she was disabled during the period in question. Accordingly, we find no manifest error in the hearing officer's award of temporary total disability.

SEB
The hearing officer awarded Ferrier SEB in the amount of $759.71 per month beginning May 13, 1992. To recover SEB, based upon disability and not substantial pain, an employee must first prove by a preponderance of the evidence that she is unable to earn wages equal to ninety percent or more of the wages she earned before the accident. La.R.S. 23:1221(3)(a); Peveto v. WHC Contractors, 93-1402 (La. 1/14/94), 630 So.2d 689; Daigle v. Sherwin-Williams Co., 545 So.2d 1005 (La.1989); Glascock v. Georgia-Pacific Corp., 635 So.2d 474 (La.App. 2 Cir.1994). If the employee overcomes this initial step, then the burden shifts to the employer to establish that the employee is earning less than he is able to earn by showing the employee is physically able to perform a certain higher paying job and that the job was offered to him or was available to him in a reasonable geographic location. La.R.S. 23:1221(3)(c)(i); Peveto, supra.
We have reviewed the record and conclude that Ferrier has proven by a preponderance of the evidence that she is presently unable to earn wages equal to ninety percent or more of her pre-illness wages. The medical evidence shows that Ferrier is unable to physically return to her former employment at Jordache as either a serger or sewing machine operator. Because the defendants presented no evidence pursuant to La.R.S. 23:1221(3)(c)(i), demonstrating that Ferrier was physically able to perform other employment, or that such other employment was offered to plaintiff or available in her community, we find that the hearing officer properly awarded SEB to Ferrier, beginning May 13, 1992, when her temporary total disability ended. In reaching our decision, we recognize that a hearing officer's determination of SEB is afforded great weight and will not be disturbed absent manifest error. See Fusilier v. Slick Const. Co., 94-11 (La.App. 3 Cir. 6/1/94), 640 So.2d 788.

Medical and Travel Expenses
In the case sub judice, the hearing officer found that all of Ferrier's medical expenses were both reasonable and necessary, notwithstanding any expenses related to Fenoli Health Clinic's treatment of Ferrier's sinus difficulties. The hearing officer awarded Ferrier $6,110 for her medical expenses at Rapides General Hospital, $2,410 for her medical expenses at LSU Medical Center, and $6,242, less any expenses for Ferrier's sinus therapy, for the chiropractic therapy incurred at Fenoli Health Clinic. The hearing officer also found that Ferrier was entitled to $2,131.20 for expenses incurred for her travel to and from LSU Medical Center and Fenoli Health Clinic. Pursuant to LSA-R.S. 23:1203, an insurer has a duty to furnish all reasonable and necessary medical and travel expenses incurred by an employee as a result of a work related accident. We find no clear error in the hearing officer's award of medical and travel expenses.
*19 Additionally, the record supports the hearing officer's determination that Ferrier's chiropractic treatment at Fenoli Health Clinic and related travel expenses were both reasonable and necessary to the care and treatment of her work related injuries. The defendants argue, based upon the testimony of Dr. Charles Herring, an expert in chiropractic medicine, that Ferrier's chiropractic treatment at Fenoli Health Clinic was not necessary and reasonable because it allegedly did not move her toward a cure for her injuries, but only relieved her pain. Defendants' argument is not well founded since an employee is not only entitled to treatment which cures her work related injuries, but is also entitled to palliative care that relieves her pain. See Martin v. H.B. Zachry Co., 424 So.2d 1002 (La.1982); Gourdon v. Rockwood Ins. Co., 368 So.2d 1156 (La.App. 3d Cir.1979). Therefore, we find no abuse of discretion in the hearing officer's award of chiropractic and related travel expenses.

Penalties and Attorney's Fees
Defendants contend that the hearing officer erred in awarding penalties and attorney's fees in favor of Ferrier and Fenoli Health Clinic.
The hearing officer awarded Ferrier a 12% penalty for all unpaid medical expenses and past due compensation benefits. She also awarded Ferrier and Fenoli Health Clinic a 12% penalty on all unpaid chiropractic expenses, less any expenses for her sinus therapy. The hearing officer further awarded $5,000 in attorney's fees to Ferrier and $5,200 attorney's fees to Fenoli Health Clinic. In her reasons for judgment, the hearing officer found that the defendants' refusal to pay medical and chiropractic expenses and compensation benefits constituted arbitrary and capricious behavior. Because the award of penalties and attorney's fees involves two differing classes of claimants, an injured worker and a health care provider, we will set forth the general provisions of law relative to the award of penalties and attorney's fees and separately assess the capacities of these claimants to such awards.
LSA-R.S. 23:1201(E) allows the OWC to assess a 12% penalty for nonpayment of benefits unless the employer or the insurer "reasonably controverted" the employee/claimant's right to worker's compensation benefits. Under LSA-R.S. 23:1201.2, a worker's compensation insurer or employer is subject to payment for all reasonable attorney's fees if the failure to pay benefits is found to be arbitrary, capricious, or without probable cause.
A hearing officer has great discretion in the award of penalties and attorney's fees, and her decision will not be disturbed by an appellate court absent manifest error. Dietz v. Guichard Drilling Co., 626 So.2d 79 (La.App. 3 Cir.1993). An award of penalties and attorney's fees is essentially a question of fact and should not be reversed unless clearly wrong. Comeaux v. Grey Wolf Drilling Co., 93-1289 (La.App. 3 Cir. 5/4/94), 640 So.2d 532, writ denied, 94-1339 (La. 9/16/94), 642 So.2d 193.
We have carefully detailed the facts of this case in the earlier part of this opinion and do not feel that it is necessary to reiterate those facts in this present discussion. Likewise, our review of the applicable statutes shows that Ferrier, the worker-claimant, has been specifically included in the legislation as a member of the class that is entitled to receive an award of penalties and attorney's fees. After carefully reviewing the record, we find no clear error in the hearing officer's finding that the defendants failed to reasonably controvert Ferrier's right to receive worker's compensation benefits and that their actions were arbitrary and capricious. Accordingly, we affirm the hearing officer's award of penalties and attorney's fees to the claimant.
We now turn to the question of whether the hearing officer erred in awarding penalties and attorney's fees to the health care provider, Fenoli Health Clinic.
Fenoli Health Clinic relies on LSA-R.S. 23:1034.2(F) and LSA-R.S. 23:1201.2. Without citing jurisprudence to support its appreciation of the statutes, it contends that the hearing officer had authority to award it penalties and attorney's fees. Fenoli Health Clinic states that R.S. 23:1034.2(F) extends to health care providers the same procedures *20 as established for dispute resolution in the worker's compensation arena. Having been so included, it further argues that it may be awarded penalties and attorney's fees under the provisions of LSA-R.S. 23:1201 and 1201.2, since these form a part of the procedure of dispute resolution available to workers.
It is well accepted in Louisiana that attorney's fees are not allowed except where authorized by statute or contract. Quealy v. Paine, Webber, Jackson & Curtis, Inc., 475 So.2d 756 (La.1985). Attorney's fees statutes must be construed strictly because the award of attorney's fees is exceptional and penal in nature. Cracco v. Barras, 520 So.2d 371 (La.1988). Moreover, because of the penal nature of attorney's fees awards, they are not favored and should be made only in cases that are clear and free from doubt. Moore, Romero & Co. v. Nan Corp., 458 So.2d 675 (La.App. 3 Cir.1984). Likewise, LSA-R.S. 23:1201(F), the source provision for penalty awards, is a penal statute and therefore must be strictly construed. Hayes v. Louisiana Risk Management, 93-1144 (La.App. 3 Cir. 4/6/94), 635 So.2d 591, writ denied, 94-1020 (La. 6/17/94), 638 So.2d 1097.
Initially, we note that in Acts 1989, Nos. 25 and 454, the Louisiana legislature enacted two versions of LSA-R.S. 23:1034.2(F).[1] Without having to decide which of the two versions should be applied, we find that neither statute expressly authorizes the award of penalties and attorney's fees to the health care provider. Accordingly, we hold that based on the stricti juris nature of penal statutes, R.S. 23:1034.2(F) cannot be utilized to justify the award of penalties and attorney's fees to Fenoli Health Clinic.
We likewise find Fenoli Health Clinic's reliance on LSA-R.S. 23:1201.2 misplaced. R.S. 23:1201.2 provides, in pertinent part, as follows:
Any insurer liable for claims arising under this Chapter, and any employer whose liability for claims arising under this Chapter is not covered by insurance, shall pay the amount of any claim due under this Chapter within sixty days after receipt of written notice. Failure to make such payment within sixty days after receipt of notice, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject employer or insurer, in addition to the amount of the claim due, to payment of all reasonable attorney's fees for the prosecution and collection of such claim, ... (emphasis added).
From the language of the statute, it is clear that its thrust is to provide that the worker's claim for compensation benefits will be promptly paid. In that regard, it also is clear that the statute does not explicitly provide for the award of attorney's fees to a party other than the worker's compensation claimant. To read the statute to provide such fees for the health care provider would require us to extend attorney's fees to the health care provider by implication only.
In light of Louisiana's well settled jurisprudence that strictly construes attorney's fee statutes and penal legislation, we do not find that there was a legal basis for the hearing officer's award of penalties and attorney's fees to the health care provider. Accordingly, we find that the hearing officer erred as a matter of law in making an award of penalties and attorney's fees to Fenoli Health Clinic. Therefore, we reverse this aspect of the judgment and set aside the hearing officer's award of penalties and attorney's fees to Fenoli Health Clinic.[2]
*21 In making that determination, we note with interest the provisions of LSA-R.S. 23:1142. In that statute, the Louisiana legislature established a mechanism for the payment of medical expenses for an injured worker. In particular, LSA-R.S. 23:1142(D) provides:
Fees and expenses. If the payor [employer or employer's worker's compensation insurer] has not consented to the employee's request to incur more than a total of seven hundred fifty dollars for any and all nonemergency diagnostic testing or treatment when such consent is required by this section, and it is determined by a court having jurisdiction that the withholding of such consent was arbitrary and capricious, or without probable cause, the employer or the insurer shall be liable to the employee for reasonable attorney fees related to this dispute and for any medical expense so incurred by him for an aggravation of the employee's condition resulting from the withholding of such health care provider services.
Notably in that statute, the legislature did not rely upon LSA-R.S. 23:1201.2 to authorize the award of attorney's fees by implication. Instead, following the stricti juris tradition of this state, it specifically authorized the award of attorney's fees in instances where the employer or insurer, whichever the case may be, arbitrarily and capriciously withholds consent to an employee's request to incur expenses for diagnostic testing or treatment in excess of that provided by statute. In that instance attorney's fees may be awarded to the worker/claimant, not the health care provider.

Decree
For the foregoing reasons, we reverse and set aside that part of the judgment that granted penalties and attorney's fees in favor of Fenoli Health Clinic. In all other respects, we affirm the judgment of the Office of Worker's Compensation. Costs of the Office of Worker's Compensation and this appeal are assessed one-half to Jordache-Ditto Apparel and Executive Risk Consultants and one-half to Fenoli Health Clinic.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.
DOUCET, C.J., and LABORDE[*] and KNOLL, JJ.
PER CURIAM.
In its application for rehearing, James R. Fenoli, D/B/A Fenoli Health Clinic, claims that our decision is contrary to Burch v. Tioga Manor Nursing Home, 94-489 (La. App. 3 Cir. 11/2/94), 649 So.2d 545, rendered by another panel of this court. Because we decline to follow Burch as it pertains to awarding a health care provider attorney's fees under the Louisiana Worker's Compensation Act, we deny the application for rehearing with this per curiam.
In Burch, another panel of this court awarded attorney's fees to an intervenor medical health care provider in a worker's compensation claim, concluding that La. R.S. 23:1201.2 and La.R.S. 23:1142(D) entitled the health care provider to attorney's fees under the clear language of the statute where the refusal to pay the medical bills was arbitrary and capricious. In examining these articles closely, we find that La.R.S. 23:1142(D) grants attorney's fees only to the claimant: "the employer or the insurer shall be liable to the employee for reasonable attorney's fees...." The panel in Burch interpreted La.R.S. 23:1201.2 which states, "the payment of all reasonable attorney's fees for the prosecution and collection of such claim,..." as entitling the health care provider, not the claimant, to attorneys's fees. We disagree. Although the word "employee" or "claimant" is not mentioned as the payee in La.R.S. 23:1201.2, we find that the claimant or employee is implied since a third party, e.g. a health care provider, was not specifically named. As we stated infra in the case sub judice, the award of attorney's fees is granted by statute only; it is penal legislation and interpreted stricti juris. We find that absent wording specifically naming a third party entitlement to attorney's fees, the award *22 of attorney's fees to third party health care providers is contrary to the scheme of the Louisiana Worker's Compensation Act, which is intended for the benefit of the injured worker. Moreover, under our stricti juris approach to the award of attorney's fees, this award cannot be implied, but must be specifically granted by statute.
Accordingly, with this per curiam, the rehearing is denied.
NOTES
[1] Acts 1989, No. 25, § 1 provides:

Should a dispute arise between a health care provider and the employee, employer, or worker's compensation insurer, the parties shall submit the dispute to the office in accordance with the provisions of law governing disputes.
Acts 1989, No. 454, § 2, eff. Jan. 1, 1990, provides:
Should a dispute arise between a health care provider and the employee, employer, or worker's compensation insurer, either party may submit the dispute to the office in the same manner and subject to the same procedures as established for dispute resolution of claims for worker's compensation benefits.
[2] Because we have reversed the hearing officer's award of attorney's fees to Fenoli Health Clinic, we do not have to address its answer to the appeal, seeking an increase of attorney's fees for defending the judgment in the appellate court. Ferrier did not answer the appeal, seeking an increase in attorney's fees.
[*] Hon. P.J. LABORDE, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.