**DAVID Y. MARTIN, JR., INC.**
**d/b/a Wines Unlimited**

v.

**HEUBLEIN, INC.**

**Civil Action No. 95–0417.**

United States District Court,
E.D. Louisiana.

Oct. 21, 1996.

John T. Nesser III, Liane K. Hinrichs, J. Timothy Woodard and Ashley Higgins of Nesser, King & LeBlanc, New Orleans, LA, for Plaintiffs.

Colvin G. Norwood, Craig L. Ceasar and Lauren L. Zimmerman of McGlinchey Stafford & Lang, New Orleans, LA, for Defendants.

### ORDER AND REASONS

MENTZ, District Judge.

This is a diversity case arising under Louisiana law for wrongful termination of a distributorship. Before the court is the defendant Heublein, Inc.'s Renewed Motion for Judgment as a Matter of Law, Alternatively for a New Trial or Remittitur, and in the Further Alternative to Alter or Amend Judgment.

Also before the court is the plaintiff Wines Unlimited's Motion to Alter or Amend Judgment to Provide for (1) Interest on the Damages from the Date of the Breach or the Date of Default, and (2) Attorney Fees.

For the reasons stated below, the motions are denied.

### Background

On October 29, 1993, the defendant Heublein signed a letter of agreement with the plaintiff David Y. Martin, Jr., Inc. d/b/a Wines Unlimited ("Wines Unlimited") in which Wines Unlimited would distribute a wine product for Heublein. On or about September 15, 1994, Heublein notified Wines Unlimited that it would no longer use Wines Unlimited to distribute its wine. Wines Unlimited sued Heublein for, *inter alia*, failure to provide adequate notice prior to terminating its wine distributorship. Shortly thereafter, two additional companies, Stimson–Lane and Avia, terminated their distributorships with Wines Unlimited.

A jury trial was conducted from May 13, 1996 to May 21, 1996. The jury found in favor of Wines Unlimited. The jury found that the letter of agreement between Heublein and Wines Unlimited was not a binding or enforceable contract, that Heublein had not provided reasonable notice prior to terminating its business relationship with Wines Unlimited, that Heublein had acted in bad faith, and that Wines Unlimited had relied to its detriment upon Heublein. The jury awarded damages in the amount of $626,-823.35, and the court entered judgment for that amount plus interest to run from the date of judicial demand.

Heublein now moves for judgment as a matter of law, alternatively for a new trial or remittitur, and in the further alternative to alter or amend the judgment. Heublein challenges the sufficiency of the evidentiary basis of five of the jury's findings of fact, as well as the evidentiary basis for the award of damages.

In addition, Wines Unlimited now moves to amend the judgment to provide for interest from the date of the breach (May 15, 1994) or the date that Wines Unlimited allegedly placed Heublein in default (May 19, 1994), some 2 years, 4 months prior to the date of judicial demand. Wines Unlimited also moves for an award of attorney fees.

### I. HEUBLEIN'S MOTIONS

#### A. Motion for Judgment as a Matter of Law

The standard for a judgment as a matter of law is expressed in Rule 50(a)(1) of the Federal Rules of Civil Procedure as follows:

If ... a party has been heard with respect to an issue and there is no legally sufficient evidentiary basis for a reasonable jury to have found for the party on that issue, the court may grant a motion for judgment as a matter of law against the party.

The Fifth Circuit in *Boeing Co. v. Shipman*, 411 F.2d 365 (5th Cir.1969) explained the test as follows:

If the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict, granting the motion is proper.... If there is substantial evidence opposed to

the motion, ... the motion should be denied.

*Id.* at 374.

Heublein contends that the no reasonable juror could find that the letter agreement was not an enforceable contract. The defendant relies upon two cases: *Pan American Import Co. v. Brown–Forman Corp.,* 1988 W.L. 110600 (E.D.La. October 14, 1988), and *Corenswet, Inc. v. Amana Refrigeration, Inc.,* 594 F.2d 129 (5th Cir.), *cert. denied,* 444 U.S. 938, 100 S.Ct. 288, 62 L.Ed.2d 198 (1979). In both cases, the court enforced the terms of contracts between the parties despite claims that the agreements were unenforceable. In sum, the defendant contends that the written word must control the relationship between the parties.

■ There is, however, sufficient evidentiary basis in the case at bar for the jury to have concluded that the letter agreement was not an enforceable contract, or that it was not in effect at the time of the termination of the distributorship. The letter agreement provided that there would be a "review period" during which time Heublein would evaluate the performance of Wines Unlimited. Heublein contends that this review process was merely a resolutory condition which it was not bound to conduct. Heublein further argues that the contract remained in effect because it was never formally terminated. However, Wines Unlimited presented evidence that the review process had ended, including evidence that Heublein made representations that the review process had been completed. In addition, Wines Unlimited presented evidence that the parties had abandoned the agreement, and that neither party believed that the terms continued to be binding. The testimony of Richard Fuller, a Heublein representative, was that he did not consider the letter to be a contract. Also, Wines Unlimited presented evidence that Heublein did not follow the terms of the agreement. In sum, there was ample evidence for the jury to conclude that the letter was not an enforceable contract or was not in effect when Heublein terminated the distributorship.

■ Heublein's second contention is that there is insufficient evidence for a jury to find that the notice of termination was unreasonable. The reasonableness of the notice depends largely upon the facts of each case. *See Caston v. Woman's Foundation, Inc.,* 262 So.2d 62, 65 (La.Ct.App. 1st Cir. 1972), *writ refused,* 262 La. 1087, 266 So.2d 220 (1972). The course of conduct between the parties, as well as the industry custom and practice, is relevant. *See* La.Rev.Stat. Ann. § 10:1–205. In contrast, Heublein relies heavily upon caselaw to define a standard of reasonable notice for distributorship terminations. While consideration of case law is appropriate in reviewing a jury's finding, this court rejects the notion that a standard can be established entirely from case law. The jury's determination of reasonable notice must focus upon the particular facts of the case before it, together with any evidence of industry custom and practice.

Wines Unlimited presented evidence that the notice was unreasonable for several reasons. The product supplied by Heublein comprised 30–40% of Wines Unlimited's business. Also, Wines Unlimited depended upon Heublein's product as a "door opener" to the sales of other products. Wines Unlimited also expended time and money in promoting the product. Furthermore, Wines Unlimited demonstrated that the holiday season was particularly important to its annual sales, thereby making the need for additional notice all the more acute. In *Colony Liquor Distrib., Inc. v. Jack Daniel Distillery–Lem Motlow Prop., Inc.,* 22 A.D.2d 247, 254 N.Y.S.2d 547 (1964), the court held that the degree of investment and the importance of the product are factors that should be considered in evaluating the reasonableness of notice of termination of a distributorship. Wines Unlimited has adequately presented these and additional factors which weigh heavily in its favor. The court has no doubt that the evidence is sufficient to support the jury's finding.

■ Heublein contends that the court did not permit it to introduce evidence of industry custom and practice. The court did exclude the testimony of Heublein's proposed expert, George Villar, on the ground that he

did not possess the requisite qualifications to testify about general industry custom and practice regarding distributorship terminations. That ruling did not preclude Heublein from offering other evidence of industry custom and practice. Indeed, Heublein admitted evidence of its own custom and practice in terminating its distributors. Heublein offered no other evidence of industry custom or practice.

■ Heublein also contends that there is insufficient evidence to support a finding of bad faith. Wines Unlimited claimed that Heublein acted in bad faith when Heublein misled Wines Unlimited regarding the status of the termination. Heublein argues that it had not made the decision to terminate the distributorship until September 15, 1994, just prior to notifying the Wines Unlimited. Wines Unlimited, however, presented evidence that the decision to terminate the distributorship had been made as early as December, 1993. The plaintiff submitted the deposition testimony of Jeff Sumner and Gregg Bell, two of Heublein's representatives, in which the witnesses admitted that the decision to terminate had been made in December, 1993. Also, Wines Unlimited submitted a memorandum which supported this testimony. Wines Unlimited also introduced testimony that Heublein represented, after the decision allegedly had been made to the contrary, that Wines Unlimited would keep the distributorship. Given the extent of the evidence to support the contention that the decision to terminate the distributorship had been made several months prior to the actual termination, and that Heublein had made misleading representations to the contrary, it is entirely reasonable for the jury to conclude that Heublein had acted in bad faith.

■ Heublein also argues that there is insufficient evidence to support a finding of detrimental reliance. The standard for demonstrating detrimental reliance is a strict one. *See Kibbe v. Lege,* 604 So.2d 1366 (La.Ct.App.3d Cir.), *writ denied,* 606 So.2d 540 (La.1992) (holding that claimant must prove each element of detrimental reliance with "unusual clearness"). Heublein contends that it made no representations to

Wines Unlimited upon which it could reasonably rely, and that Wines Unlimited had not taken any action in reliance. Heublein is mistaken on both points. Wines Unlimited presented testimony that Heublein represented that the review period had ended. Furthermore, Wines Unlimited's witnesses testified that, on the basis of those representations, it maintained and increased its promotion of the product. It is not necessary, as Heublein contends, that Wines Unlimited expand its warehouse space or hire additional sales staff in order to show that its reliance upon the Heublein's representations. *See State Bank & Trust Co. of Golden Meadow v. Boat D.J. Griffin,* 755 F.Supp. 1389 (E.D.La. 1991). Because Wines Unlimited presented evidence that it had continued to promote the product, it was reasonable for jury to conclude that Wines Unlimited had relied to its detriment.

■ Heublein also contends that there is insufficient evidence to find that there was a causal link between the lack of notice and the termination by the other companies, Stimson–Lane and Avia. Heubleiin argues that Wines Unlimited mistakenly drew a causal link between the termination by the other companies and the *actual* termination by Heublein, rather than the lack of *notice* by Heublein. This argument is without merit. It is entirely reasonable for the jury to conclude that the layoffs of Wines Unlimited sales personnel, which led to the terminations by the other companies, would not have occurred but for Heublein's lack of notice. There is no meaningful difference, in this context, between the effect of Heublein's lack of notice and the effect of Heublein's actual termination.

■ Finally, Heublein contends that Wines Unlimited mistakenly based its calculation of damages upon the lack of notice instead of the actual fact of the termination. Again, the distinction in this context is inappropriate. Because Wines Unlimited could have taken action if notice had been adequate, it is reasonable for the jury to conclude that the damages flowed as much from the lack of notice as from the termination itself. The distinction between the two

events is not relevant to the degree which Heublein claims.

### B. Alternative Motion for a New Trial or Remittitur

Under Rules 50(b) and 59(a) of the Federal Rules of Civil Procedure, a court may, in the exercise of sound discretion, grant a new trial if the verdict is against the great weight of the evidence. As stated above, Heublein has failed to establish that the evidentiary basis for the jury's findings is insufficient. The court believes that the evidence is not only sufficient to support the verdict, it is ample. The jury's decision is not against the "great weight of the evidence."

Furthermore, after considering the testimony regarding the range of appropriate damage awards, remittitur is not warranted. The damage award is well below the maximum that a reasonable jury could have awarded.

### C. Alternative Motion to Alter or Amend Judgment

For the reasons stated above, Heublein has failed to show a manifest error of law or fact. Therefore, its motion under Rule 59(e) to amend the judgment is also denied.

## II. WINES UNLIMITED'S MOTION TO ALTER OR AMEND JUDGMENT

Wines Unlimited filed this motion within ten days of the entry of judgment. Thus, the motion is construed under Rule 59(e) of the Federal Rules of Civil Procedure. "Motions to alter or amend a judgment must clearly establish ... a manifest error of law...." *Simon v. United States,* 891 F.2d 1154, 1159 (5th Cir.1990) (quoting *Fed. Deposit Ins. Corp. v. Meyer,* 781 F.2d 1260, 1268 (7th Cir.1986)). As such, the standards arising from Rule 59(e) "favor the denial of motions to alter or amend judgment." *Southern Constructors Group, Inc. v. Dynalectric Co.,* 2 F.3d 606, 611 (5th Cir.1993). Given this standard of review, we consider Wines Unlimited's motions.

### A. Interest from the Date of Breach or of Placing in Default Versus the Date of Judicial Demand

The court awarded interest to run from the date of judicial demand. Wines Unlimited now moves that interest should run from the date of the breach or the date that it placed Heublein in default.

The primary case in Louisiana on the issue of awarding pre-judgment interest is *Alexander v. Burroughs,* 359 So.2d 607 (La.1978). The court in *Alexander* noted the myriad of cases on this issue and the inconsistency of their rules. However, the court found a thread of consistency among them, and held that interest runs "from the moment of the active violation of a contract." That holding was reiterated in *Thomas B. Catchings & Assoc. v. City of Baton Rouge,* 621 So.2d 768 (La.1993), in which the court held, in a short per curiam opinion, that "an obligee is entitled to interest from the date of default rather than the date of judicial demand." *Id.* at 769.

There is, however, an exception to the broad *Alexander* rule. In *Trans–Global Alloy Ltd. v. First Nat'l Bank of Jefferson Parish,* 583 So.2d 443 (La.1991), the court considered whether interest should run from the date of the breach, or in the alternative, whether interest should run from the date of judicial demand. *Id.* at 457. In contrast to the relatively simple task of calculating the damages at the time of the breach in *Alexander,* the situation in *Trans–Global* was "a highly complicated one in which three courts have had difficulty in determining whether there was a breach meriting compensation, and what the consequential damages of that breach should be." *Id.* at 459. Furthermore, because the amount of damages awarded by the trial and appellate courts varied widely, the amount of the damages at the time of breach could not be ascertained. The court therefore distinguished *Alexander,* and held that because of the highly complicated task of ascertaining the amount of damages at the time of the breach, interest would run only from the date of judicial demand. *Id.*

Heublein urges us to read *Trans–Global* as holding that interest from the date of breach

should be awarded *only* when the damages at that time are "easily ascertainable." *Trans–Global* did *not* hold that damages must be "easily ascertainable" in order for interest to run from the date of breach. Rather, the court had merely characterized the calculation of damages in prior cases as "easily ascertainable" *in comparison* to the facts of *Trans–Global.* Therefore, *Trans–Global* held only that interest does not run from the date of breach when the calculation of damages at that date is "highly complicated." The cases have not addressed the question of whether interest runs from the date of breach when the calculation of damages is *less* than "highly complicated."

Many of the cases in which interest was awarded from the date of breach were suits for a specific sum of money under a contract, such as payment of a debt. *See Catchings, supra; Alexander, supra; Knecht v. Bd. of Trustees for State Colleges,* 591 So.2d 690 (La.1991); *Ortego v. Dupont,* 611 So.2d 792 (La.Ct.App.3d Cir.1992). The damages at the date of the breach were easily calculated by referring to the contract. However, there also are cases which were not suits for payment of a specific sum under a contract where the courts awarded interest from the date of the breach. *See delaVergne v. delaVergne,* 514 So.2d 186 (La.Ct.App. 4th Cir. 1987), *writ denied,* 519 So.2d 118 (La.1988) (awarding damages based on the difference between two offers to purchase property); *see also Mini Togs Prod., Inc. v. Wallace,* 513 So.2d 867, 873 (La.Ct.App.2d Cir.), *writ denied,* 515 So.2d 447 (La.1987). In those cases, the damages were ascertainable even though the suit was not for payment of a specific contractual sum or a debt. Clearly, in order for interest to run from the date of the breach, it is not necessary that the precise amount of the damages be liquidated or absolutely certain. *Id.*

The Louisiana courts have not provided a clear rule to determine whether a case is too "complicated" to calculate the damages with sufficient certainty. The courts have established only that, in order for interest to run from the date of breach, damages must be ascertainable; the courts have not specified the degree of certainty that is necessary in order to reach that conclusion. There is little guidance for those instances that are not as simple as a suit for a specific sum of money under a contract, but are also not as complicated as the calculation of damages in *Trans–Global.*

The question in the case at bar is a close one. This suit did not involve a simple breach of an obligation to pay a specific sum of money. Rather, Wines Unlimited's suit was for lost profits and other damages arising from Heublein's wrongful termination of a business relationship. Furthermore, Wines Unlimited relied upon expert testimony to demonstrate the extent of the damages, which potentially ranged up to $2,000,000. Considering the complexity involved in arriving at the amount of damages, and the wide range of justifiable damages, the determination is sufficiently complicated under the standard set by *Trans–Global.* Therefore, this court finds that the damages are not ascertainable at the date of breach because they cannot be calculated with the required degree of certainty. Interest shall therefore run from the date of judicial demand.

### B. *Attorney Fees*

The well-established rule in Louisiana is that attorney fees may be recovered only when authorized by statute or contract. *See Ogea v. Loffland Bros. Co.,* 622 F.2d 186 (5th Cir.1980) (citing *Rhodes v. Collier,* 215 La. 754, 41 So.2d 669 (La.1949)). In the case at bar, there is no contractual provision for attorney fees, therefore, they may be awarded, if at all, only by virtue of codal authority.

Louisiana Civil Code Article 1997 provides that "an obligor in bad faith is liable for all the damages, foreseeable or not, that are a direct consequence of his failure to perform." The Louisiana circuit courts are split on the issue of whether article 1997 includes an award of attorney fees in the case of bad faith, fraud, or malice. The court in *Newport Ltd. v. Sears, Roebuck & Co.,* 1995 WL 688799 (E.D.La. Nov. 21, 1995) provided an extensive summary of the jurisprudence arising under article 1997. In essence, the Louisiana Second Circuit and Third Circuit have held that article 1997 does not provide for attorney fees in bad faith breach of contract cases. *See Lloyd v. Merit Loan Co. of*

*Shreveport,* 253 So.2d 117 (La.Ct.App.2d Cir.), *writ refused,* 259 La. 1050, 254 So.2d 462 (1971); *Lancaster v. Petroleum Corp. of Delaware,* 491 So.2d 768 (La.Ct.App.3d Cir. 1986). In both cases, the courts denied claims of attorney's fees on the ground that article 1997 did specifically provide for them.

The Louisiana First and Fourth Circuits have taken a contrary approach. Most recently, in *Airline Constr. Inc. v. Ted Hicks & Assoc., Inc.,* 506 So.2d 554, 557 (La.Ct.App. 1st Cir.), *writ denied,* 511 So.2d 1157 (La. 1987), the court reiterated the holding of *Cobb v. Gallet,* 392 So.2d 134 (La.Ct.App. 1st Cir.1980). In *Cobb,* the court held that "an exception [to the rule against awarding attorney fees] is found if there is fraud or bad faith on the part of the contracting party against whom relief is sought." Also, the Fourth Circuit recognized the bad faith exception in *Rye v. Terminix Service Co., Inc.,* 423 So.2d 754 (La.Ct.App. 4th Cir.1982). The court reiterated the rule that "attorney's fees are recoverable [in case of] bad faith, lack of good faith or fraud." *Id.* at 757.

The federal Fifth Circuit Court of Appeals, in examining Louisiana law, has relied upon *Lloyd* and its progeny in rejecting claims for attorney fees. In *Ogea v. Loffland,* the Fifth Circuit noted that "no Louisiana statute expressly provides for an award of attorney's fees...." 622 F.2d at 190. *See also Makofsky v. Cunningham,* 576 F.2d 1223 (5th Cir. 1978); *Delta Truck & Tractor, Inc. v. Navistar Int'l Transp. Corp.,* 833 F.Supp. 587, 590–91 (W.D.La.1993). Furthermore, this court has addressed this issue and adopted the Fifth Circuit's approach. In *Radiofone, Inc. v. Pricellular, Corp.,* 1993 WL 133830 (E.D.La. April 16, 1993), this court held that, despite earlier jurisprudence to the contrary, article 1997 does not provide for attorney fees. *Id.* at 8. Absent a resolution of the conflict among the Louisiana circuit courts, or a revision of the interpretation of Louisiana law by the Fifth Circuit, this Court adheres to its prior decision in *Radiofone.* There is, therefore, no statutory grant of attorney fees available to Wines Unlimited.

Accordingly,

IT IS ORDERED that:

1) Heublein's Motion for Judgment as a Matter of Law, Alternative Motion for New Trial or Remittitur, and Further Alternative Motion to Alter or Amend Judgment is **DENIED**; and

2) Wines Unlimited's Motion to Alter or Amend Judgment (1) for Interest from Date of Breach or Placing in Default and (2) for Attorney Fees is **DENIED**.