laGREMILLION, Judge.
The defendant, Bobby Smith d/b/a “The Spot” (Smith), appeals a judgment terminating a lease between him and the plaintiffs, Robert and Jacqueline Shirley, and *242 evicting him from the leased premises. For the following reasons, we reverse the judgment.
FACTS
Smith operated “The Spot” lounge in premises he leased from Ross Investments, Inc.- The Shirleys own and operate “Frozen Spirits,” a lounge which is located adjacent to and north of “The Spot.” In July 1996, after obtaining approval from the State Fire Marshall, Smith began the construction ■ of additional bathrooms for “The Spot.” However, after pouring the concrete for the addition, Robert complained to Richard Ross, the president of Ross Investments, and the State Fire Marshall that the plumbing was not being performed by a licensed plumber nor was it up to code, and that the construction was being performed on his property and was |3causing his building to flood during rainy weather. On October 16, 1996, Smith obtained a survey showing the property line between the Shirleys’ property and his leased property. The survey depicts the concrete slab extending out seven foot six inches from the north side -of “The Spot” and within the property line. Smith stopped construction of the addition upon request of Ross, who was negotiating the sale of the property to the Shirleys.
Prior to purchasing the property, the Shirleys sent a demand letter to Smith requesting proof of a valid state/city liquor license, liability/contents insurance policies, and a tax clearance certificate. The letter, dated April 7, 1997, further demanded that Smith remove the concrete slab and all work materials pertaining to construction of the addition and that the work be performed by a license contractor to prevent Frozen Spirits from flooding during rainy weather. Robert ended the letter by stating that Smith would be in direct violation of his lease if these demands were not met within the time frame stated in the lease. The sale of the property .from Ross Investments to the Shirleys was not perfected until April 24,1997.
The Shirleys again made demand upon Smith on May 9,1997, and further ordered him to remove the partially completed construction and to divert water from “Frozen Spirits.” The Shirleys gave Smith thirty days to comply with them demands or he would be in direct violation of the lease, resulting in its termination. On May 18, 1997, Smith responded to the Shirleys, requesting proof that they were his landlords and stating that he would have his insurance agent send them proof of his insurance policy.
On May 26, 1997, the Shirleys notified Smith that if he did not comply with their earlier demand letter by June 16, 1997, he would be in direct violation of [ 4his lease and the lease would be terminated. Thereafter, Robert notified the Department of Health and Hospitals (DHH) and the Office of Public Health that water was flooding his building as a result of Smith’s construction and that “The Spot” did not have adequate restroom facilities. Following an inspection on July 17, 1997, DHH notified Smith that “The Spot” violated the Louisiana State Sanitary Code because it only had a urinal, instead of a commode, in the men’s restroom. In a September 8, 1997 letter, the Shirleys’ attorney ordered Smith to remove the concrete slab and restore the ditch between the two properties within five days of receipt of the letter. It further stated that the Shirleys had discussed with Smith “several violation of codes with regard to your structure. Pursuant to your lease, it is incumbent on you to bring the structure up to code, and your failure to bring such structure up to code has resulted in the cancellation of your lease for breach of contract.” The letter gave Smith ten days to vacate the premises or a lawsuit would be filed.
Following a second inspection of “The Spot” on October 9, 1997, a semi-formal meeting was held between Smith and the representatives of the Office of Public Health concerning the continuing violation of “The Spot.” Smith agreed to construct new restrooms in order to bring “The *243 Spot” up to code and this agreement was reduced to writing and signed by Smith and Larry Amburg, the Sanitarian Regional Director Region VI for the Office of Public Health. The agreement stated that Smith would perform the construction if authorization was obtained from Robert.
On November 10, 1997, the Shirleys filed a Rule to Terminate and to Evict, seeking to terminate Smith’s lease for the following violations of his lease:
a. Failing to provide proof of content and liability insurance.
b. Failing to provide proof that all property taxes have been |spaid to date.
c. Failing to provide copies of current state and local liquor licenses.
d. Failing to remove all trash around the business known as The Spot.
e. Installing concrete and pipes on the North side of the building to install a restroom that fails to meet existing health and building codes.
f. Failing to remove said concrete and pipe, thereby causing draining problems to contiguous properties.
The Shirleys also sought reasonable attorney’s fees as provided in the lease agreement. Denying that he violated the terms of the lease, Smith reconvened alleging that the Shirleys had interfered with his peaceable possession of the leased premises, that they had harassed him and placed impossible conditions on him, and he sought damages for harassment, inconvenience, and mental anguish, and attorney’s fees.
Following a trial on the merits, the trial court issued written reasons for judgment finding in favor of the Shirleys. The trial court found that the lease required Smith to meet all state and local building codes when performing renovations or construction on “The Spot.” The trial court further held that the Southern Building Code was applicable to “The Spot” and that it required a ten foot space between buildings. The trial court found that the addition encroached by seven feet into the ten foot space between “The Spot” and “Frozen Spirits,” resulting in a violation of the code. The trial court further held that “The Spot” was in violation of the state code requiring adequate restroom facilities and plumbing. Since Smith failed to comply with the term of the lease requiring all renovations or construction meet state and local building codes, the trial court held that the Shirleys were entitled to terminate the | filease.
Smith appealed suspensively from this judgment, however, in an unpublished opinion, this court converted the appeal to a devolutive appeal upon a finding that Smith failed to raise an affirmative defense in his answer. Shirley v. Smith d/b/a “The Spot,” 98-691 (La.App. 3 Cir. 6/29/98); 716 So.2d 194. Additionally, in an unpublished opinion, this matter was remanded for the limited purpose of retaking the testimony of witnesses since the courtroom microphones had malfunctioned, rendering their testimony inaudible. Shirley v. Smith d/b/a “The Spot,” 98-691 (La.App. 3 Cir. 2/3/99); 735 So.2d 135. The court also held that Smith did not breach the lease provision requiring he provide the Shirleys with proof of liability insurance since the evidence showed that he had complied with that provision. In further discussing the record, we stated:
The trial court found the Southern Building Code to be applicable to the defendant’s building and further found that the Southern Building Code “requires a space of ten (10) feet between adjacent buildings.” There is no evidence in the record as to what is required by the Southern Building Code or whether the code is applicable to the situation at hand. Additionally, the trial court found that the defendant was “in violation of the state code with regards to requirements for adequate restroom facilities and plumbing.” However, we note that this violation (if such is a violation) is as a direct result of the plaintiffs’ *244 actions, and not the fault of the defendant.
Id. at pp. 4-5 (footnote omitted). We stated that the trial court should, depending on the testimony, reconsider its ruling concerning the application of the codes mentioned.
Following the hearing on remand, the trial court again held that Smith had violated the terms of the lease and that the Shirleys were entitled to terminate the lease and have him evicted from the premises. In oral reasons, the trial judge stated that “The Spot” was in continuing violation of the Louisiana State Health Code for |7failing to provide a commode in the men’s restroom and that the new construction was not in compliance with the “Code.” The trial court further awarded the Shirleys $5,000.00 in attorney’s fees. This appeal followed.
ISSUES
On appeal, Smith essentially argues that the trial court erred in finding that he violated the terms of the lease, in evicting him from the leased premises, and in awarding attorney’s fees to the Shirleys.
DISCUSSION
A contract of lease is a conventional obligation. La.Civ.Code arts.1906, 2668. The terms of a written contract .become the law between the lessor and lessee and may only be terminated upon the consent of the parties or through grounds provided by law. La.Civ.Code art.1983. One such ground is when the lessor or lessee fails to fulfill his obligations as provided in the lease contract. La.Civ.Code art. 2729. The party alleging the breach of contract bears the burden of proving that breach at the hearing. Bond v. Allemand, 632 So.2d 326 (La.App. 1 Cir.1993), writ denied, 94-0718 (La.4/29/94); 637 So.2d 468.
In this instance, the trial court held that “The Spot” was in continuing violation of the Health Code for failing to provide a commode in the restroom and that the new construction to add the restroom failed to comply with the “Code.” Based on these violations, the trial court held that Smith violated the terms of the lease and ordered him evicted from “The Spot.”
After reviewing the evidence present in the record, we find the trial court clearly wrong in finding that Smith violated the terms of the lease. The lease provision at issue provides:
| ¡¿Tenant shall have the obligation to conduct any construction or remodeling (at Tenant’s expense) that may be required to use the Premises as specified above. Tenant may also construct such fixtures on the Premises (at Tenant’s expense) that appropriately facilitate its use for such purposes. At the end of the lease term, Tenant shall be entitled to remove such fixtures, and shall restore the Premises to substantially the same condition of the Premises at the commencement of this Lease. Any and all renovation or construction shall meet all state and local building codes.
Although the trial court does not identify which code Smith violated with his construction, it stated in its original opinion that the Southern 'Building Code was applicable and that it required a ten foot space between adjacent buildings. However, no evidence substantiating this rule was introduced into the record by the Shirleys. The only evidence presented was Robert’s self-serving testimony that he did not think the construction was being done to code and that he felt the fifty-six inches between the two buildings was too close. Amburg questioned whether the slab was too close to the property line, but admitted that he was unsure of the property line’s location. Additionally, as pointed out in our earlier opinion, we are unsure that such a rule would apply when one owner owns both buildings. Since there is no evidence validating a “ten foot” rule and the evidence showed that the State Fire Marshall approved the construction, we find error in the trial court’s determination that Smith violated the code.
*245 Moreover, while we agree that “The Spot” was in continuing violation of the State Health Code, that violation was a direct result of the Shirleys’ actions. Although the lease requires Smith to conduct any construction or remodeling required to use the premises as specified, the Shirleys prevented him from doing so. After purchasing the property, the Shirleys reported the violation to DHH and then prevented Smith from bringing “The Spot” up to code through their actions. Thus, the |9blame for the continuing violation rightly rests with the Shirleys and not with Smith. As stated in our prior opinion, it is obvious that the Shirleys never intended for the lease to continue and were willing to use any means available to them to terminate it. Thus, the trial court erred in finding that Smith violated the terms of the lease as a result of this violation.
Based on our finding that Smith did not violate the terms of the lease, we find that the trial court erred in terminating the lease and ordering his eviction from “The Spot.” We also reverse the trial court’s award of attorney’s fees. However, since the Shirleys have already torn down “The Spot,” we cannot order that Smith be returned to the premises. Since an action for eviction is summary in nature and involves the single issue of whether the lessor is entitled to the leased premises, Smith’s only recourse is to seek damages through a suit for wrongful eviction. Mouton v. P.A.B., Inc., 450 So.2d 410 (La. App. 3 Cir.), writ denied, 458 So.2d 118 (La.1984).
CONCLUSION
For the foregoing reasons, the judgment of the trial court is reversed. The costs of this appeal and the previous appeal are assessed to the plaintiffs-appellees, Robert and Jacqueline Shirley.
REVERSED.