815 So.2d 980 (2002)
Bobby SMITH
v.
Robert SHIRLEY, et ux.
No. 01-1249.
Court of Appeal of Louisiana, Third Circuit.
February 6, 2002.
Writ Denied May 24, 2002.
*983 Clay Williams, Williams & Nelson, Leesville, LA, Counsel for Plaintiff/Appellant: Bobby Smith.
Elvin Fontenot, Jr., Attorney At Law, Leesville, LA, Counsel for Defendants/Appellees: Robert Shirley, et ux.
Court composed of Chief Judge NED E. DOUCET, JR., HENRY L. YELVERTON, and JIMMIE C. PETERS, Judges.
YELVERTON, J.
Bobby Smith appeals a judgment limiting his award of damages to $1,500 in mental anguish damages for wrongful eviction from a leased place of business. He claims that the trial court erred in refusing to award other claimed damages. We find merit to his assignment of error and increase the award.

FACTS
Smith operated a lounge in Leesville, Louisiana known as "The Spot." He leased the premises from Ross Investments, Inc. Next door to "The Spot" was a lounge called "Frozen Spirits." Robert and Jacqueline Shirley owned and operated that business. On April 24, 1997, the Shirleys bought the property where "The Spot" was located from Ross Investments, subject to the lease with Smith. During the sale negotiations, the Shirleys made demands on Smith to comply with the terms of the lease, eventually resulting in the Shirleys filing a rule to terminate and evict seeking to terminate Smith's lease. The trial court found in favor of the Shirleys and held that they were entitled to cancel the lease.
Smith appealed that decision suspensively to this court. In an unpublished opinion, this court converted the appeal to a devolutive appeal due to Smith's failure to allege an affirmative defense in his answer. Shirley v. Smith d/b/a "The Spot," 98-691 (La.App. 3 Cir. 6/29/98); 716 So.2d 194. In another unpublished opinion the matter was then remanded to the trial court for the retaking of the testimony of the witnesses because the courtroom microphones had malfunctioned. Shirley v. Smith d/b/a "The Spot," 98-691 (La.App. 3 Cir. 2/3/99); 735 So.2d 135. On remand, the trial court found that Smith violated the terms of the lease and that the Shirleys were entitled to have him evicted from the premises.
In the appeal after remand, Shirley v. Smith, 99-1281 (La.App. 3 Cir. 2/2/00); 758 So.2d 241, a published opinion, this court held that Smith had not violated the terms of the lease and that the trial court erred in ordering his eviction from "The Spot." Because Shirley had already torn down the building housing "The Spot," this court found that Smith could not be returned to the premises. Therefore, this court decided that Smith's only recourse was an action for wrongful eviction damages. We reversed the decision which the trial court had rendered in favor of the Shirleys. We refer the reader to our reported decision and opinion for a more thorough discussion of the facts surrounding the eviction proceeding.
Smith then filed the instant action for damages for wrongful eviction. Finding that Smith was wrongfully evicted, the trial *984 court awarded damages in the amount of $1,500 for mental anguish to Smith, but granted no other damages. Smith appeals the judgment. Along with the failure to award damages, Smith assigns error to the trial court's findings that Smith voluntarily abandoned the premises and that the Shirleys were not in bad faith.

VOLUNTARY ABANDONMENT
Smith argues that the trial court erred in finding that he voluntarily abandoned the premises. The facts introduced at the trial on this matter reveal that Smith began looking for a new place for his lounge in early July 1998, following the city court judgment that found that the Shirleys were entitled to cancel the lease and this court's conversion of his appeal to a devolutive appeal. Smith moved into a new building on August 24, 1998. Robert Shirley testified that after he heard Smith had moved out, he went to the building on August 24 and saw it was not occupied. A month later, he had the building torn down.
In reasons for judgment the trial court indicated that Smith's failure to plead an affirmative defense, resulting in a devolutive appeal as opposed to a suspensive appeal, was the reason Smith had to vacate the premises in August. Therefore, the trial court stated that Smith voluntarily left the premises. However, it also found that Smith was wrongfully evicted and awarded damages.
In New Orleans Hat Attack, Inc. v. N.Y. Life Ins. Co., 95-55, 95-56 (La.App. 4 Cir. 11/30/95); 665 So.2d 1186 (citing Goldblum v. Harden, 183 So.2d 756 (La.App. 4 Cir.1966) (citing People's Bank v. Levy, 151 La. 583, 92 So. 124 (1921))), the court held that an evicted lessee who takes a devolutive appeal does not voluntarily acquiesce in the judgment when he vacates the premises. This is because the right to take an appeal is not forfeited when the lessee complies with the judgment evicting him.
We agree with Smith that he did not voluntarily abandon the premises. He was only complying with a judgment that resulted from the Shirleys' rule for eviction. The trial court's ruling that Smith was wrongfully evicted stands, so we will now address Smith's entitlement to damages for wrongful eviction.
Pursuant to Louisiana Civil Code Article 2696, when the lessee is evicted, the lessor is liable for the damage and loss which the lessee sustained by the interruption of the lease. The contract of lease is subject to the rules of conventional obligations. La. Civ.Code art. 2668. "An obligor in good faith is liable only for the damages that were foreseeable at the time the contract was made." La.Civ.Code art. 1996. "An obligor in bad faith is liable for all the damages, foreseeable or not, that are a direct consequence of his failure to perform." La.Civ.Code art. 1997; Friendly Finance, Inc. v. Cefalu Realty Invest., Inc., 303 So.2d 558 (La.App. 1 Cir.1974).
Smith claims the trial court erred in finding the Shirleys were not in bad faith. We agree. As we stated in our earlier reported decision, the Shirleys offered no evidence to support their claim that the Southern Building Code was applicable to this case and that it required a ten-foot space between adjacent buildings. The only evidence on this issue was Robert Shirley's self-serving testimony that he did not feel that Smith's construction to add bathroom facilities was performed to code. Furthermore, we were not even sure that any such restriction would apply when one owner owns both buildings. While we agreed that there was a continuing violation of the State Health Code, we found that the blame for the continuing violation *985 rested with the Shirleys and not with Smith because they suspended the construction. We confirmed our earlier expressed opinion that "it is obvious that the Shirleys never intended for the lease to continue and were willing to use any means available to them to terminate it." Shirley, 758 So.2d at 245.
The Shirleys' actions in trying to evict Smith were in bad faith. Therefore, the Shirleys are liable under Article 1997 for all damages, foreseeable or not.

Costs of Improvements
Smith argues that the trial court erred in failing to award damages for leasehold improvements by applying Louisiana Civil Code Article 491. Article 491 provides that buildings and other constructions permanently attached to the ground may belong to a person other than the owner of the ground. However, they are presumed to belong to the owner of the ground unless an instrument indicating separate ownership is filed in the conveyance records. The trial court found that the only instrument recorded was the lease and that there was nothing in the public records to place the Shirleys on notice that Smith had an ownership interest in the building or constructions on the property.
When the Shirleys bought the property on April 24, 1997, they knew that Smith had a lease on the property. Furthermore, the lease was recorded in the public records on April 23, 1997, before the sale to the Shirleys. Regarding improvements to the leased property, the lease provided:
REMODELING OR STRUCTURAL IMPROVEMENTS. Tenant shall have the obligation to conduct any construction or remodeling (at Tenant's expense) that may be required to use the Premises as specified above. Tenant may also construct such fixtures on the Premises (at Tenant's expense) that appropriately facilitate its use for such purposes. At the end of the lease term, Tenant shall be entitled to remove such fixtures, and shall restore the Premises to substantially the same condition of the Premises at the commencement of this Lease. Any and all renovation or construction shall meet all state and local building codes.
Where a lessee who has made improvements to leased property is evicted prior to the expiration of the lease term, lessee is entitled to recover damages calculated on the basis of the value of the improvements proportioned over the remaining term of the lease. Knapp v. Guerin, 144 La. 754, 81 So. 302 (1919); Friendly Finance, 303 So.2d 558. As stated in Friendly Finance, 303 So.2d at 561 (quoting Leake v. Hardie, 245 So.2d 729, 731 (La.App. 4 Cir.1971)):
"Even where the lease provides (as here) that improvements are to be the property of the lessor, the lessee makes the improvements for his own use and enjoyment during the term of the lease, and at least where the lessor's action deprives the lessee of that use and enjoyment, the lessee is entitled to recover a proportionate cost of the value of improvements contemplated by the lease...."
Also see Mahayna, Inc. v. Poydras Center Associates, 95-932 (La.App. 4 Cir. 12/14/95); 665 So.2d 166, writs denied, 96-398, 96-424 (La.3/22/96); 669 So.2d 1210, 1211.
Smith's lease for the old "Spot" was a 15-year lease with a term from January 1, 1996, to December 31, 2010. When Smith was evicted at the end of August 1998, he still had 12 years left on the terms of the lease. Therefore, Smith was entitled to 12/15 of their value of any improvements he made to the property.
*986 Smith testified about improvements he made during this lease term. He also introduced receipts for the work done to support his testimony. Additionally, a couple of people testified about the work they had performed at the old "Spot." We find that Smith established that he spent $31,047.50 for improvements to the old "Spot" starting in early 1996. Therefore, he is entitled to $24,838 as damages for the value of improvements he made to the leased premises which he did not get the benefit of because he was wrongfully evicted.
We did not include a couple of improvements Smith claimed he made to the property. Smith introduced a receipt for $5,900 for parking lot concrete which was poured around 1990-1991, during his previous lease. He got the full use of this improvement during the entire period of his first lease, so we do not find that it is compensable. We also find a $450 charge from Donnie Mitchell for restoring the Shirleys' property after a ditch was dug, would not be a compensable improvement. There was not enough evidence to establish that this was a leasehold improvement.
Where a lessee is wrongfully evicted from leased premises prior to the expiration of the lease, the landlord is liable to the tenant for damages for the cost of securing premises substantially comparable to those from which tenant was evicted. Friendly Finance, 303 So.2d 558.
Smith also had to expend funds on the new "Spot" to prepare it for opening. He testified about the improvements that were needed and introduced receipts to support the claimed amounts. We award $1,971.09 to Smith for funds he had to spend to get the new "Spot" ready for business.
We do not award $375 that Smith spent on a new alarm system. The new alarm system was installed on August 13, 1998. Pursuant to the terms of the lease Smith could have taken the old alarm system with him. The Shirleys did not lock the old "Spot" until August 26. Therefore, it is obvious that Smith did not want the old alarm system.

Moving Expenses
Smith also appeals the trial court's failure to award any moving expenses. Smith had to move two storage buildings from the old "Spot" to the new "Spot." He introduced receipts indicating a total cost of $270 to which we find he is entitled.
Smith also had to advertise for a new liquor license for the new location which cost $100. Since he moved from New Llano and into the parish area, he had to secure a new liquor license and occupational license for a total cost of $287.50. We do not find that Smith is entitled to reimbursement for the licenses he purchased at the old "Spot" because he would have to secure licenses for at least one of the premises in order to operate, so we disallow this amount. We award $387.50 to Smith for new license expenses he had due to the move.

Loss of Income
Smith claims the trial court also erred in failing to award him any damages for loss of income. Smith claimed a loss of income from video poker machines and a loss of income from liquor sales.
A claim for lost profits will not be supported by mere estimate of losses. Loss of profit awards may not rest on speculation or conjecture unless direct evidence is not available to establish this element of damages. `Loss of profits must be proved with reasonable certainty-i.e., the more probable than not standard.' While the absence of independent, *987 corroborating evidence may not be fatal to the plaintiff's burden of proof, the lack of even a minimal degree of detail or specificity as the extent of loss precludes an award.
Angelo v. Rapides Bank & Trust, 95-992 (La.App. 3 Cir. 4/10/96); 671 So.2d 1283, 1288, writs denied, 96-1173, 96-1204 (La.6/21/96); 675 So.2d 1083 (quoting Gulf American v. Airco Indus. Gases, 573 So.2d 481, 492 (La.App. 5 Cir.1990) (citations omitted)).
Smith testified that his video poker machines were not operational from August 24, 1998, to September 16, 1998. To establish his claim for lost profits, he introduced a 1099 tax form showing an income for 1998 of $29,351.94. In an affidavit Smith separates the video poker income into monthly amounts. The income in August and September was lower than the other ten months. An average of the income of the other ten months is $2,753. August's income was $992, so we find that Smith is entitled to a loss of $1,761 for the month of August. September's income was $826, so we find that Smith is entitled to a loss of $1,927 for the month of September. We find that Smith has sufficiently proven his entitlement to these amounts of lost income.
Smith also claims that he lost $5,000 in liquor income. There was no documentation to support his testimony. Furthermore, it was revealed that Smith's business was never closed because he moved on the weekend and opened the new business on Monday. Therefore, we find that Smith failed to establish a loss of liquor income.

Attorney's Fees
Smith claims that the Shirleys were in bad faith when they filed suit to evict him. He argues that this entitles him to an award for his attorney's fees.
Attorney's fees in Louisiana are not allowed except where authorized by statute or contract. Rhodes v. Collier, 215 La. 754, 41 So.2d 669 (1949); Ferrier v. Jordache Ditto's, 94-1317, 94-1318 (La. App. 3 Cir. 5/17/95); 662 So.2d 14, writ denied, 95-2865 (La.2/2/96); 666 So.2d 1100. The lease in this case only provide for attorney's fees in the case of default by the lessee. Therefore, attorney's fees may be awarded only if there is statutory authority.
As we have previously indicated, Article 1997 provides that an obligor in bad faith is liable for all damages, foreseeable or not, that are a direct consequence of his failure to perform. In Lancaster v. Petroleum Corp. of Delaware, 491 So.2d 768 (La.App. 3 Cir.1986), this court would not award attorney's fees for a bad faith breach of contract since there was no statutory or contractual provision providing for them.
Recognizing the fact that attorney's fees awards "are not favored and should be made only in cases that are clear and free from doubt," we find that Article 1997 does not provide for attorney's fees in this case since it does not specifically state that attorney's fees are recoverable. Ferrier, 662 So.2d at 20; see also David Y. Martin, Jr., Inc. v. Heublein, Inc., 943 F.Supp. 637 (E.D.La.1996).
For the above reasons the judgment of the trial court is amended to provide that Robert and Jacqueline Shirley are ordered to pay Bobby Smith $30,219.59 as damages in addition to the $1,500 already awarded. In all other respects the judgment is affirmed. Costs of this appeal are assessed to Robert and Jacqueline Shirley.
AFFIRMED AS AMENDED.