831 So.2d 488 (2002)
D & D INVESTMENTS, A Partnership
v.
FIRST BANK AND TRUST formerly Automotive Bank and formerly Metro Bank.
No. 02-CA-440.
Court of Appeal of Louisiana, Fifth Circuit.
October 29, 2002.
*489 Jacob Kansas, New Orleans, LA, for Appellant, D & D Investments, A Partnership.
Phelps Dunar, LLP, Brent B. Barriere, Katherine M. Determan, Matthew A. Woolf, New Orleans, LA, Demartini, D'Aquila & Volk, Aaron F. Broussard, Kenner, LA, for Appellee, First Bank and Trust.
Panel composed of Judges JAMES L. CANNELLA, CLARENCE E. McMANUS and WALTER J. ROTHSCHILD.
*490 JAMES L. CANNELLA, Judge.
Plaintiff/Lessor, D & D Investments, appeals from the judgment rendered in favor of Defendant/Lessee, First Bank and Trust, Inc. (First Bank). For the reasons which follow, we affirm.
Lessor filed suit for eviction of First Bank on the grounds that First Bank had breached its lease in two respects: (1) non-payment of rent for the months of May and June of 2001, and (2) removal and destruction of the Lessor's property, a pylon with a mechanized rotating cube sign on top.
The leased property is located at 3235 North Causeway Boulevard in Metairie. In March of 1981, a vacant lot was originally leased to Southern Savings and Loan Association (Southern Savings), who constructed the improvements on the property including the pylon sign. Southern Savings failed and was taken over by the Resolution Trust Corporation. The premises, improvements and sign were eventually returned to Lessor and, thereby, became its property.
On July 29, 1993, Lessor leased the property and improvements to Automotive Bank. Before Automotive Bank opened, it merged with Metro Bank and sought and was granted permission to change the illuminated faces on the pylon sign to reflect the Metro Bank name and logo. The lease provided for any notices to Lessee to be in writing and delivered in person or sent by United States Certified or Registered Mail, return receipt requested, to Lessee at the leased premises. However, by letter dated November 9, 1993, Metro Bank requested that any notices be sent to its main office on Williams Boulevard in Kenner. By response letter, Lessor agreed to the notice location change.
On June 14, 2000, Lessor was notified by Metro Bank that it was merging with First Bank, that the merger should be complete by September and requested Lessor's consent according to the lease agreement. Lessor responded on July 24, 2000 that it had no objection to the merger. No further information was sent to Lessor concerning the merger or any changes of address. In fact, the physical change occurred between May and June of 2001.
Lessor alleged in its petition that it did not receive the May, 2001 rent from Lessee. On three previous occasions over the eight year period of the lease, when rent was late, the Lessee was immediately notified by Lessor and the rent was paid. This time, Lessor testified that, because the Lessor's managing partner was out of town most of the month, no action was taken. Then, on June 1, when the June rent was allegedly not received, Lessor sent a letter to Metro Bank at the Williams Boulevard location, headed "Lease Default/ North Causeway Branch." The letter provided
In accordance with our lease dated 7/29/93, rent is due on or before the first of the month. Our office has not received May or June rent for the above location on North Causeway. This is the third time we have had to notify you of a failure to pay rent on a timely basis. The lease terms are specific and outline our options under the "Default" provision contained within the document.
The lease provided that, in the event of default, the Lessor, after giving notice and allowing ten days to comply, had the option: (1) to cancel the lease; (2) to proceed one or more times for past due installments of rent; or (3) any other remedy provided by law. Lessor, near that same time, drove past the leased premise and discovered that the large pylon and sign had been removed and replaced with a First Bank sign. On June *491 19, 2001, after Lessee had failed to respond, Lessor delivered to the leased premises a "5 Day Notice to Vacate for Non-Payment of Rent." This notice referred to the non-payment of rent for May and June and contained a paragraph at the end concerning the removal of the sign. On June 22, 2001, First Bank attempted to tender replacement checks for rent payment for the months of May and June, 2001. Lessor refused the payments. First Bank also communicated its view that the lease gave the Lessee the right to replace the sign. On August 1, 2001, Lessor brought the present action for possession of the premises, or eviction.
Following a judge trial, the trial judge ruled in favor of First Bank and against the Lessor and denied the rule for eviction. In doing so, the trial judge made several factual findings and credibility determinations. He found that the Lessee did timely issue and mail checks to the Lessor for the May and June rent. He referred to the testimony of the Metro Bank employee, Stephanie Manuel, responsible for making the May rent payment. He expressly found her testimony to be credible and found that the May check was issued and mailed timely. The trial judge then referred to the testimony of the First Bank employee, Chantel Martin, responsible for making the June rent payment after the merger. He expressly found her testimony to be credible and found that the June check had been issued and mailed timely. The trial judge stated that, "The court has no doubt that both the May and June rent checks were mailed on a timely basis." He went on to note that Lessor admitted that rent under the current lease was well below its marketable value as "a possible motive to terminate the lease." The trial judge concluded that Lessor had not satisfied him that there had been "a failure to make timely payments of rent."
Concerning the sign, the trial judge did find that it was the property of the Lessor and that, under the lease, First Bank did not have the right to remove and destroy it without the Lessor's consent. However, he held that the removal and destruction of the sign did not constitute grounds for eviction. First, the trial judge noted that the Lessor had not complied with the required 10-day notice of default in the lease. Second, he noted that eviction was not favored under the law. The loss of the sign was a minor part of the lease, considering the stated purpose of the lease, and it could be quantified by monetary damages, so that eviction was not justified under the circumstances.
It is from this judgment that Lessor appeals. Lessor has assigned four errors, one concerning the late rent payments and three concerning the removal of the pylon and sign. First Bank has answered the appeal arguing entitlement to costs, expenses and attorneys' fees.

Rental Payment
Lessor argues herein that despite the trial judge's findings regarding the May and June rent checks, it is still entitled to eviction for breach of the lease because First Bank did not timely supply replacement checks after notification of non-receipt was sent on June 1. In other words, Lessor argues that First Bank's failure to timely cure the alleged default of non-payment of rent entitles it to the eviction.
Contrary to Lessor's interpretation of the trial judge's findings, First Bank points out that the trial court findings were broader than Lessor suggests. The trial judge found, by way of express credibility determinations, that there was no breach of the lease with regard to the late payment of rent, that is, that the evidence did not establish First Bank's failure to make timely payments of rent. Absent *492 proof of a default in the timely payment of the rent, the default provisions of the lease do not come into play and there was nothing for First Bank to cure. Moreover, within three days of actual notice to First Bank at the leased premises, payment was tendered and rejected.
It is well settled that, on appellate review of a factual determination, the reviewing court may not set aside the factfinder's findings of fact in the absence of manifest error or unless they are clearly wrong. Also, where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring, 283 So.2d 716 (La.1973). The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Stobart v. State through DOTD, 617 So.2d 880 (La. 1993). Thus, where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart, supra; Rosell v. ESCO, 549 So.2d 840, (La. 1989)
When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings, for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Canter, supra at 724; Virgil v. American Guarantee & Liability Ins. Co., 507 So.2d 825, 826 (La. 1987); Boulos v. Morrison, 503 So.2d 1, 3 (La.1987); Williams v. Keystone General Contractors, Inc., 488 So.2d 999, 1001 (La. 1986); Johnson v. Insurance Co. of North America, 454 So.2d 1113, 1117 (La.1984); Berry v. Livingston Roofing Co., 403 So.2d 1247, 1249 (La.1981); Crump v. Hartford Accident & Indemnity Co., 367 So.2d 300, 301 (La.1979).
In this case, the trial judge did make credibility determinations, finding that the First Bank witnesses were credible in their testimony and that the May and June rent checks were issued and mailed timely. He implicitly made a credibility determination regarding Lessor in questioning his motivation because the rent under the current lease was about one-half of market value. Based on these credibility determinations, and the unlikelihood that two different employees, in two consecutive months, who issue a total of 1,200 checks, would have only these two checks not reach their destinations, the trial judge found that First Bank did "attempt timely payments of rent for May and June, 2001." We find no manifest error in his findings and, in fact, find them supported by the record. Therefore, Lessor's argument, that First Bank breached the lease by not timely curing the alleged default of non-payment of the rent, has no merit. The trial judge determined that there was no default with regard to the non-payment of rent. Therefore, there was nothing to cure.
Furthermore, when Lessor actually notified First Bank at the leased premises on June 19th of the alleged rent payment problem, payment of rent was tendered by First Bank on June 22nd, within three days.[1] Lessor rejected that tender and all subsequent rental payment tenders.
*493 Based on the foregoing, we find no error in the trial judge finding that the evidence of default regarding the May and June rental payments was not sufficient to support a judgment of eviction.

Pylon and Sign
Lessor argues that the trial court erred in finding that the removal and destruction by First Bank of the pylon and sign did not constitute a breach of the lease entitling Lessor to evict First Bank. More specifically, Lessor argues that the trial court erred in finding that it was not entitled to eviction because Lessor did not comply with the very terms of the lease, requiring a 10-day notice of default. Lessor argues that the notice of default is not required under the circumstances presented here, where First Bank committed an active breach and the notice of default would be vain and useless. Further, Lessor argues that the trial judge erred in supplying the 10-day notice defense, because it is the equivalent of a prematurity exception which must be expressly pled by a defendant. Finally, Lessor argues that the trial judge erred in finding that the removal and destruction of the pylon and sign could be quantified and paid as damages and was not significant enough to the lease to require eviction for the breach.
First Bank argues that there was no error in the trial court ruling. The very paragraph of the lease, Paragraph 25, upon which Lessor relies for the eviction, requires a 10-day notice of default, before the option of eviction is available. First Bank argues that the lease is the law between the parties and, since it requires a 10-day notice of default, without exception, the trial judge was correct in denying the rule to evict where Lessor had not given the notice. Lessor did not allege nor prove that it gave First Bank a 10-day notice of default regarding the sign problem. First Bank did raise the lack of the notice requirement in its answer and reconventional demand. First Bank also points out that the active breach concept is no longer part of Louisiana law. Moreover, First Bank additionally asserts that any error regarding the sign occurred in good faith on the part of First Bank. First Bank did not realize that the sign was covered by Paragraph 14 of the lease, concerning alterations to the leased premise, but rather believed that Paragraph 20, allowing the erection by it of any signs and requiring the removal of same at the termination of the lease, controlled the issue and allowed the replacement of the sign. Thus, given that First Bank's actions were a matter of mistake rather than intent, coupled with the insignificant part that the sign has to the purpose of the lease, First Bank argues that the trial court was correct in denying the rule to evict under these circumstances.
It is well settled that the lease forms the law between the parties and is to be enforced by the courts. Pendleton v. Shell Oil Company, 408 So.2d 1341 (La. 1982). The default paragraph of the lease, Paragraph 25 provides, in pertinent part:
If Lessee fails to pay any installment of rent due under this lease, or fails to comply with any other provision of this lease within the (10) days after receipt of written notice by Lessor to Lessee demanding same, or if Lessee abandons the leased premises or discontinues the use of the lease premises for the purpose for which leased, then Lessor shall have the right after receipt of ten (10) days written notice, at Lessor's option, (1) to cancel this lease effective immediately or effective as of any date Lessor may select, or (2) to proceed one or more times for past due installments of *494 rent only, without prejudicing the right to proceed later for additional installments or exercise any other remedy, or (3) to have recourse to any other remedy or mode of redress to which Lessor may be entitled by law. (Emphasis added.)
Clearly, the lease provisions require a 10-day notice of default before the Lessor can exercise the option of cancellation. Lessor's arguments herein as to why the lease requirement for the 10-day notice should not be applied to the facts of this case are unpersuasive.[2] As found by the trial judge and supported by the evidence, Lessor did not give First Bank a 10-day default notice regarding the removal and destruction of the pylon and sign. Thus, under the very terms of the lease, Lessor was not entitled to cancellation of the lease for this breach, and the trial judge ruling to that effect was not in error.
Lessor argues that the "5 Day Notice to Evict for Non-Payment of Rent" should suffice as the 10-day notice requirement under the lease. We disagree.
The document in question, the "5 Day Notice to Evict for Non-Payment of Rent," was clearly a request to leave the premises and in no way indicated a willingness to allow reparation instead of eviction. In fact, First Bank was told as much upon contacting Lessor, when Lessor informed First Bank that it did not want the rent, but only wanted First Bank out of the leased premises. Further, the title as well as the main thrust of the document relates to the non-payment of rent with only a small paragraph placed at the bottom about the sign. A 5-day notice to vacate simply cannot take the place of a 10-day notice of default. Rather, it is an additional requirement imposed by law. La. C.C.P. art. 4701.
Lessor also argues that the trial court erred in refusing to grant the eviction because First Bank violated the lease by its removal and destruction of the pylon and sign. While we do not find it necessary to reach this issue in view of our finding above, that eviction was precluded because of the absence of the 10-day notice requirement, we direct Lessor's attention to the fact that evictions are not favored in the law. Goldblum v. C & C Investments, 444 So.2d 642 (La.App. 5th Cir.1983). Moreover, the facts of this case do not favor Lessor's position. The lease provisions were somewhat confusing. The pylon with the rotating sign on top of it was a separate structure from the main building. The lease generally, in Paragraph 14, disallowed alterations to the "leased premises," but specifically, in Paragraph 20, allowed erection and removal of signs. The sign was not expressly referenced in the lease as part of the "leased premises." Thus, it is easy to see why First Bank thought it had the right to change the sign. Nevertheless, the trial court did find that the actions of First Bank in removing the pylon and sign did violate the lease agreement. We note, as did the trial judge, that the sign issue is a minor part of the lease considering the designated purpose of the lease, use of the property as a bank branch. And finally, there was evidence of the apparent motivation of the Lessor in seeking eviction, to get out of what had become a lease far below market value. Based on the foregoing, it is not readily apparent to this Court that the exercise of judicial discretion by the trial judge in denying the eviction on these grounds would stand out as abuse of that discretion under these circumstances, *495 had appropriate notice of default been given.

Costs, Expenses and Attorneys Fees
The trial judge denied First Bank's request for full costs, expenses and attorney fees. Although no reasons were given by the trial judge, we glean from the record and the reasons for judgment that he did not find First Bank entirely blameless in this controversy, although he ultimately found that eviction was not warranted. First Bank did not give Lessor any notice of change of address for notices under the lease. Had it done so, the 10-day notice would have been timely received by First Bank and replacement checks could have been timely tendered, avoiding the need for litigation. Further, the trial court did find that the removal and destruction of the sign was a violation of the provisions of the lease, warranting damages although not eviction. It is noted that, like evictions, attorney's fees awards are not favored and are only made in cases that are clear and free from doubt. Smith v. Shirley, 01-1249 (La.App. 3rd Cir.2/6/02), 815 So.2d 980, writ denied, 02-0688 (La.5/24/02), 816 So.2d 308. Under these circumstances, we find no error in the trial court's decision to deny costs, expenses and attorneys' fees to First Bank.[3]
Accordingly, for the reasons set forth above, the judgment of the trial judge denying Lessor's rule to evict and First Banks' request for full costs, expenses and attorneys fees is affirmed. Costs of appeal are to be paid by each party.
AFFIRMED.
NOTES
[1] Testimony indicates that the June 1st notice, sent to the Metro Bank main office on Williams Boulevard, was not received by First Bank until around June 19th.
[2] Here, concerning the 10-day notice provision, Lessor argues that the provisions of the lease needn't be followed. However, below, Lessor argues for strict adherence to the lease provisions entitling Lessor to the option of eviction for any violation of the lease, whether intentional or not, and regardless of its significance to the purpose of the lease.
[3] We note that First Bank's arguments, supra, were in favor of the application of judicial discretion on the sign issue, rather than strict construction of the lease, as is sought here on the attorney fee issue.